# FILED

**CONFIDENTIAL – FILED UNDER SEAL**

EC MAR 7 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CME Group Inc., Chicago Mercantile
Exchange Inc., New York Mercantile
Exchange, Inc., Commodity Exchange,
Inc., Board of Trade of the City of Chicago,
Inc., and Pivot, Inc.,

                            Plaintiffs,

v.

Dmitro Nagovskiy, Konstantin Chechurin,
OVH SAS, Webzilla B.V., GoDaddy.com,
LLC, and Does 1-3,

                            Defendants.

1:19-cv-01621
Judge Sharon Johnson Coleman
Magistrate Judge Sheila M. Finnegan

### MOTION TO FILE MEMORANDUM IN EXCESS OF 15 PAGES
### IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR
### TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Northern District of Illinois Local Rule 7.1, Plaintiffs CME Group Inc.,

Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity

Exchange, Inc., Board of Trade of The City of Chicago, Inc., and Pivot, Inc. (hereinafter

collectively referred to as "CME Group") hereby apply to this Court for approval to file its

Memorandum in Support of its *Ex Parte* Motion for Temporary Restraining Order

("Memorandum") in excess of fifteen (15) pages. In support of this Motion, CME Group

states as follows:

1.      CME Group is applying to this Court for an *ex parte* temporary restraining

order and a preliminary injunction under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

("Order"). CME Group alleges that Defendants Dmitro Nagovskiy, Konstantin Chechurin,

OVH SAS, Webzilla B.V., GoDaddy.com, LLC, and Does 1-3 (hereinafter collectively

CONFIDENTIAL – FILED UNDER SEAL

referred to as "Defendants") are committing willful acts of trademark counterfeiting, trademark infringement, cybersquatting, copyright infringement and phishing.

2.      CME Group hereby applies to this Court for the excess pages so that it can adequately present the facts and authority supporting its present case against a number of defendants. In particular, the Memorandum details the Defendants' unauthorized use of CME Group's registered trademarks and copyrighted material in connection with the operation and maintenance of two (2) counterfeit websites, and the harm and damage to CME Group's goodwill and business reputation as a result of the Defendants' actions. In doing so, CME Group provided detailed evidence supporting its allegations. In addition, the Memorandum details the relief sought by CME Group to stop the irreparable harm caused by Defendants' conduct.

3.      CME Group has not raised or discussed any issues in its Memorandum that are not relevant to its requested Order, and CME Group has made every effort to keep the length of its Memorandum to a minimum number of pages.

4.      CME Group believes that no prejudice to any of the parties will result from the Court's granting of this Motion.

5.      A copy of CME Group's Memorandum of Law in Support of *Ex Parte* Motion for Temporary Restraining Order is attached hereto as Exhibit 1.

CME Group submits a Proposed Order herewith.

**CONFIDENTIAL – FILED UNDER SEAL**

Respectfully submitted,

CME GROUP INC.
CHICAGO MERCANTILE EXCHANGE INC.
NEW YORK MERCANTILE EXCHANGE, INC.
COMMODITY EXCHANGE, INC.
BOARD OF TRADE OF THE CITY OF
CHICAGO, INC.
PIVOT, INC.

Dated:   March 6, 2019        By: _____

Joseph M. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Matthew D. Witsman (Reg. No. 6327790)
Christian S. Morgan (Reg. No. 6327350)
Angela J. Simmons (Reg. No. 6289024)
NORVELL IP LLC
333 S. Wabash Ave., Suite 2700
Chicago, Illinois 60604
Telephone:   (888) 315-0732
Facsimile:    (312) 268-5063
courts@norvellip.com

*Attorneys for Plaintiffs*
*CME Group Inc.*
*Chicago Mercantile Exchange Inc.*
*New York Mercantile Exchange, Inc.*
*Commodity Exchange, Inc.*
*Board of Trade of The City of Chicago, Inc.*
*Pivot, Inc.*

CONFIDENTIAL – FILED UNDER SEAL

# EXHIBIT 1

CONFIDENTIAL – FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc., | Civil Action No. _____ |
| Plaintiffs, | Judge |
| v. | |
| Dmitro Nagovskiy, Konstantin Chechurin, OVH SAS, Webzilla B.V., GoDaddy.com, LLC, and Does 1-3, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER

Dated: March 6, 2019

Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Christian M. Morgan (Reg. No. 6327350)
Matthew D. Witsman (Reg. No. 6327790)
Angela J. Simmons (Reg. No. 6289024)
NORVELL IP LLC
333 S. Wabash Ave, Suite 2700
Chicago, Illinois 60607
Telephone: (888) 315-0732
Facsimile: (312) 268-5063
courts@norvellip.com

*Attorneys for Plaintiffs*
*CME Group Inc.*
*Chicago Mercantile Exchange Inc.*
*New York Mercantile Exchange Inc.*
*Commodity Exchange, Inc.*
*Board of Trade of the City of Chicago, Inc.*
*Pivot, Inc.*

**CONFIDENTIAL – FILED UNDER SEAL**

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

    A.    CME Group and its Extensive History .......................................................... 2

    B.    CME Group's Federally Registered Trademarks and Intellectual Property ...................................................................................................... 6

    C.    Defendants' Unlawful and Intentional Infringement of CME Group's Intellectual Property ................................................................................... 11

    D.    Defendants' Elaborate Fraudulent and Phishing Scheme ........................ 18

    E.    Defendants Are Causing CME Group Irreparable Harm ........................... 19

III. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER ...................... 21

IV. ARGUMENT ...................................................................................................... 21

    A.    CME Group Is Likely to Succeed on the Merits ........................................ 21

        1.    CME Group Is Likely to Succeed on its Trademark Infringement and Trademark Counterfeiting Claims ...................... 22

            a.    CME Group Owns Protectable and Registered Trademarks ......................................................................... 22

            b.    There is a Likelihood of Confusion ................................... 23

                (1)    *The Marks Are Identical in Appearance and Suggestion* ................................................. 23

                (2)    *The Similarity of the Products and Services* ............. 24

                (3)    *(The Area and Manner of Concurrent Use* ............... 24

                (4)    *The Degree of Care Likely to be Exercised by Consumers* ................................................. 24

                (5)    *The Strength of CME Group's Marks* ....................... 25

                (6)    *Evidence of Actual Confusion* ................................. 26

**CONFIDENTIAL – FILED UNDER SEAL**

            (7)     *Defendants' Clear Intent to Palm Off Their Services as That of CME Group* ...............................26

           c.     This Is a Clear Case of Trademark Counterfeiting .............27

      2.     CME Group Is Likely to Succeed on its Cybersquatting Claim ......28

      3.     CME Group is Likely to Succeed on its Copyright Infringement Claim...........................................................29

      4.     CME Group is Likely to Succeed on its Phishing Claim.................30

  B.    CME Group Has No Adequate Remedy at Law and Irreparable Harm is Likely if the TRO is Not Entered ....................................30

  C.    The Balance of Harms Tips in CME Group's Favor.................................33

  D.    The Public Interest Favors Issuance of the Temporary Restraining Order .........................................................................35

  E.    CME Group's Requested Equitable Relief Is Appropriate .........................36

      1.     A Temporary Restraining Order Is Warranted in this Case............36

      2.     An Order of Preservation Will Reduce the Irreparable Harm Being Caused ....................................................................37

      3.     CME Group Is Entitled to Expedited Discovery .............................38

      4.     Immediate Domain Name Transfer Will Preserve the *Status Quo*.........................................................................................39

  F.    No Bond is Required as the Risk of Harm to Defendants Is Low .............40

V. CONCLUSION ....................................................................................41

**CONFIDENTIAL – FILED UNDER SEAL**

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Abbott Labs. V. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ...........................21, 30

*AutoZone, Inc. v. Strick*, 543 F.3d 923 (7th Cir. 2008) ............................................26, 27

*Brach Van Houten Holding, Inc. v. Save Brach's Coalition for
Chicago*, 856 F. Supp. 472 (N.D. Ill. 1994) ........................................................22, 35, 35

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*,
482 F. Supp.2d 1065 (E.D. Wis. 2007) ....................................................................40, 41

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ..................................33

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001) ..................................24

*Chanel, Inc. v. Chanelbagsforsale-US.com*,
No. 1:12-cv-22076, 2012 WL 5364300 (S.D. Fla. Oct. 31, 2012) ..................................33

*Checker Car Club of America, Inc., v. Fay*,
262 F. Supp. 3d 621 (N.D. Ill. 2017) .............................................................................30

*CME Group Inc., et. al. v. Peter Jonhtham, et. al.*,
16-cv-4541, Dkt. No. 13 (N.D. Ill. April 26, 2016)............................................................39

*Deckers Outdoor Corporation v. Does 1-1281*,
No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012).......................................................................39

*Domanus v. Lewicki*, 857 F. Supp. 2d 719 (N.D. Ill. Apr. 13, 2012) ...............................21

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) ......................30, 34

*Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd.*,
No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010)....................................................................40

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000)...........................39

*Gucci America, Inc. and Louis Vuitton Malletier, S.A. v. Yan*,
No. 10-cv-61512-WPD (S.D. Fla. Aug. 20, 2010) ..........................................................40

*Hand & Nail Harmony, Inc. v. Guangzhou Cocome Cosmetics Co. Ltd.*,
No. 2:14-cv-01106-RFB-CWH, 2014 WL 4809928 (D. Nev. Sept. 26, 2014)...........32, 33

**CONFIDENTIAL – FILED UNDER SEAL**

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988)............................................................................22, 30, 34

*Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672 (N.D. Ill. 2006)...................28

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
540 F.2d 266 (7th Cir. 1976).........................................................................................35

*Kraft Foods Group Brands LLC, v. Cracker Barrel Old
Country Store, Inc.*, 735 F.3d 735 (7th Cir. 2013) .........................................................30

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994)......................33

*Lawrence E. Jaffe Pension Plan v. Household International, Inc.*,
No. 02 C 5893, 2005 WL 3801463 (N.D. Ill. April 18, 2005) ..........................................38

*Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*,
703 F. Supp. 2d 777 (N.D. Ill. 2010) .............................................................................36

*Lincoln Fin. Advisors Corp. v. SagePoint Fin., Inc.*,
1:09-cv-15RM, 2009 U.S. Dist. LEXIS 28142 (N.D. Ill. Apr. 2, 2009)............................25

*MasterCard Int'l Inc. v. Trehan*, 629 F. Supp.2d 824 (N.D. Ill. 2009) .............................23

*Matter of Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) ................................................37

*Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*,
128 F.3d 111 (7th Cir. 1997)..........................................................................................26

*Nano-Proprietary, Inc. v. Keesman*,
No. 06 C 2789, 2007 WL 433100 (N.D. Ill. 2007) ..........................................................40

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002)..................................38

*Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002) ..........................33

*Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424 (7th Cir. 2001) ...................................30

*Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210 (7th Cir. 1997) ..............27

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)..............26

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*,
No. CV 15-08157-BRO (Ex), 2015 WL 6680807 (C.D. Cal. Oct. 19, 2015) ...................32

*Sorensen v. WD-40 Co.*, 792 F.3d 712 (7th Cir. 2015) ...................................................23

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914 (7th Cir. 1950) .......................................35

*Tillman v. New Line Cinema Corp.*, No. 08-1667,
2008 WL 4488204 (7th Cir. Oct. 7, 2008) .......................................................................29

*TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997) .......................27

*Tory Burch, LLC, et. al. v. Yong Sheng Int'l Trade Co., LTD,*
No. 1:10-cv-09336 (S.D.N.Y. Jan 4, 2011) .....................................................................39

*Tory Burch LLC v. Does 1-100*, 12-C-7163,
2012 WL 4581409 (N.D. Ill. Oct. 2, 2012) .......................................................................28

*Trans Union LLC v. Credit Research, Inc.,*
142 F. Supp. 2d 1029 (N.D. Ill. 2001) .............................................................................39

*TV Land, L.P. v. Viacom Int'l, Inc.,* 908 F. Supp. 543 (N.D. Ill. 1995) ...........................34

*Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512 (7th Cir. 2002).....................................40

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2000) ...................................21

**Statutes:**

15 U.S.C. § 1115(a)................................................................................................22, 25

15 U.S.C. § 1115(b).......................................................................................................9

15 U.S.C. § 1125(d)(1)(A)...........................................................................................28

15 U.S.C. § 1125(d)(1)(B)...........................................................................................28

15 U.S.C. § 1125(d)(1)(C)...........................................................................................39

15 U.S.C. § 1127 .........................................................................................................27

17 U.S.C. § 106 ...........................................................................................................29

17 U.S.C. § 512 ...........................................................................................................38

740 Ill. Comp. Stat. 7/10 .............................................................................................29

**CONFIDENTIAL – FILED UNDER SEAL**

**Rules:**

Fed. R. Civ. P. 65(d) ....................................................................................................40

**Declarations:**

Declaration of Matthew J. Kelly and Related Exhibits A-I ....................................... *passim*

Declaration of Michael Franklin and Related Exhibits A-I ....................................... *passim*

Declaration of Luis Moreau and Related Exhibits A-X ........................................... *passim*

**Other Materials:**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:12 (5th ed.)..............................................................................36

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:95 (5th ed.)..............................................................................25

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:37 (5th ed.)........................................................................36, 37

CONFIDENTIAL – FILED UNDER SEAL

## I. INTRODUCTION

Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc. and Pivot, Inc. (collectively, "CME Group") seek an *ex parte* temporary restraining order enjoining willful acts of trademark counterfeiting, trademark infringement, dilution, unfair competition, cybersquatting, phishing, copyright infringement, Digital Millenium Copyright Act violations and Illinois state and common law causes of action against Defendants Konstantin Chechurin, Dmitro Nagovskiy, OVH SAS, GoDaddy.com, LLC, Webzilla B.V., and Does 1-3 (collectively, "Defendants").

Without authorization or justification, Defendants are using CME Group's federally registered trademarks CME, CME GROUP, **⬤CME Group**, CBOT, NYMEX, COMEX, , CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE and CME Group's registered copyrighted materials in connection with the operation and maintenance of counterfeit websites at www.CMEGROUPcenter.com and www.CMErussian.com (collectively, the "Counterfeit Websites"). The Counterfeit Websites are mirror images of the genuine CME Group website at www.cmegroup.com ("CME Group Website"), except that most of the content has been translated into Russian. The Counterfeit Websites are designed to confuse and elicit potential and existing CME Group customers to provide sensitive, personal and financial information as part of a scheme that seeks monetary investments from

CONFIDENTIAL – FILED UNDER SEAL

individuals. This illicit phishing scheme also seeks to defraud members of the public and subjects these individuals to identity theft and financial loss. CME Group's history is built on trust and its relationships with customers, partners, governments, investors and many other constituents in the financial markets. Defendants' acts of counterfeiting and infringement are tantamount to corporate identity theft for the purpose of stealing user names and password of CME Group's customers. This conduct is an attack on CME Group's business and its customers and is causing irreparable harm to CME Group and the public.

Because CME Group has established that: (1) it will succeed on the merits of its claims; (2) it will continue to suffer irreparable harm absent a temporary restraining order; (3) the balance of harms tips decidedly in CME Group's favor; and (4) the public interest favors issuance of a temporary restraining order, this Court is justified in enjoining Defendants' conduct.

## II. STATEMENT OF FACTS

### A.    CME Group and its Extensive History

With a history dating back to 1848, CME Group is the largest and most diverse financial exchange in the world. Declaration of Matthew Kelly ("Kelly Declaration") at ¶ 4. For more than one hundred and seventy years, traders, financial institutions, investors, corporations and governments have come to rely upon and trust CME Group for its financial and risk management services. *Id.* CME Group offers futures and options products in all major asset classes, such as metals, commodities, foreign exchange, energy, weather, interest rates, equity indexes, and other products through four financial exchanges: CME or Chicago Mercantile Exchange, CBOT or Chicago Board of Trade,

CONFIDENTIAL – FILED UNDER SEAL

COMEX or Commodity Exchange, and NYMEX or New York Mercantile Exchange. *Id.* at ¶ 5. In addition, CME Group offers financial market data services, ranging from live and delayed quotes to market reports and historical data. *Id.* For example, CME Group offers delayed and live quotes and charts on trading volumes, prices, including historical data as reflected in printouts of select pages from the CME Group Website at www.cmegroup.com. *Id.*; Kelly Declaration, Exhibit A. Such market data is often critical to the trading activities of CME Group customers. *Id.*

CME Group has traditionally operated as a live, open-outcry trading exchange. Kelly Declaration at ¶ 6. After leading the industry in open-outcry trading, CME Group championed the idea of electronic trading of futures and options through the GLOBEX® trading platform, which allows futures and options to be traded around the world and almost around the clock. *Id.* The GLOBEX® platform was launched in 1992 and was the world's first electronic futures trading platform. *Id.* Electronic trading continues to be conducted around the world for products in all major asset classes. *Id.* The shift from an open outcry exchange to electronic trading has resulted in approximately eighty-nine percent (89%) of trading activities at CME Group to take place through its electronic trading platform. *Id.*

CME Group plays a significant role in the global financial marketplace and undertakes tremendous effort, time and cost to ensure the integrity of the CME Group systems and exchanges and to protect its business, employees and customers. Declaration of Michael Franklin ("Franklin Declaration") at ¶ 6. As a result, CME Group employs resources to monitor and protect its technology infrastructure and employees against cyberattacks and has designed its cyber defense program to mitigate the risk of

CONFIDENTIAL – FILED UNDER SEAL

attacks by preventative, detective and responsive measures. *Id.* at ¶ 7.

CME Group's operations extend globally with offices in the U.S., China, Canada, Brazil, United Kingdom, Singapore, Ireland, Hong Kong, Korea, Australia, India and Japan. Kelly Declaration at ¶ 7. CME Group's customers are located around the globe, and the GLOBEX® electronic trading platform can be accessed from more than 150 countries. *Id.* In 2017, CME Group and its related entities generated revenues in excess of $3.6 billion dollars (USD), and more than 4 billion contracts were traded at CME Group and related entities. *Id.* at ¶ 8. These are astounding numbers and reflect the importance of CME Group to the world financial markets.

For more than twenty years, CME Group has utilized the Internet as a key tool for communicating and interacting with customers, partners and financial market participants – current and prospective. *Id.* at ¶ 9; Franklin Declaration at ¶ 5. CME Group owns hundreds of domain names and maintains an active Internet presence at domain names incorporating its CME® and CME GROUP® trademarks. Kelly Declaration at ¶ 9. The domain name www.cme.com was originally registered in 1994 and is still active and redirects users to the CME Group Website at www.cmegroup.com, which has been owned by CME Group since 2007. *Id.*; Franklin Declaration at ¶ 5. The CME Group Website serves as a primary point of communication between CME Group and third parties. *Id.* The CME Group Website bears the copyright notice: © 2019 CME Group Inc. and CME Group contact information, which comprise CME Group's copyright management information ("CMI"). Kelly Declaration at ¶ 9.

The CME Group Website is the primary customer interface. Kelly Declaration at ¶ 10. Every day, CME Group's current and prospective customers, partners and financial

CONFIDENTIAL – FILED UNDER SEAL

market participants log in to their online account on the CME Group Website to obtain critical CME Group information, review financial market data, download marketing collateral, update their online account and access CME Group's applications. *Id.* The upper right-hand corner of the CME Group Website contains a "Login" button for registered users to access a multitude of CME Group software applications, including market data platforms and other trading related functions. *Id.* Because of this widespread access, protection of customer data is of paramount importance for CME Group. *Id.* A screenshot of the CME Group Website landing page is shown below:



The CME Group Website contains copyrightable subject matter that is protected by U.S. copyright laws ("CME Copyrighted Materials"). Kelly Declaration at ¶ 20. The Copyrighted Materials are original to and owned by CME Group and comprise a key component of the CME Group Website and CME Group's intellectual property portfolio. *Id.* CME Group owns U.S. Copyright Registration Nos. VA 1-847-974 and VA 2-004-052

for the CME Group Website in addition to pending U.S. Copyright Application Nos. 1-7434460531 and 1-7434460931. *Id.*

CME Group takes great pride in its reputation in the marketplace. Kelly Declaration at ¶ 23. CME Group's business is built on relationships with customers large and small, with partners, investors and with many other constituents who interface with the global financial marketplace. *Id.*; Franklin Declaration at ¶ 6. To protect these relationships, CME Group undertakes tremendous effort, time and cost to ensure the integrity of the CME Group systems and exchanges remains intact. Kelly Declaration at ¶ 23; Franklin Declaration at ¶ 6. Protection of customer data – particularly personally identifiable information and passwords – is of paramount importance for CME Group. Kelly Declaration at ¶ 10. Without this protection, the confidence in CME Group exchanges would be lost and CME Group would suffer irreparable harm.

### B. CME Group's Federally Registered Trademarks and Intellectual Property

CME Group first introduced the CME mark 100 years ago in 1919, and since then, CME Group has adopted and used numerous CME-formative marks in connection with its financial and related services. Kelly Declaration at ¶ 11. CME Group uses these trademarks in advertising, marketing, and promotional materials on a nationwide and worldwide basis through various media, including but not limited to, the Internet, newspapers, direct mail, and trade magazines. *Id.*

CME Group owns extensive common law rights for a number of trademarks, such as CME, CME GROUP, 🌐 **CME Group** and other trademarks such as, CBOT, NYMEX, COMEX, 🌐, CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX,

6

CONFIDENTIAL – FILED UNDER SEAL

GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, NEW YORK MERCANTILE EXCHANGE, and others in connection with a wide variety of financial-related goods and services, including computer software, financial exchange and financial trading services, financial clearing services, financial information services, market data services, and financial trading platforms and related financial/investment services. Kelly Declaration at ¶ 12.

CME Group also has registered its trademarks around the world, including in the United States. Kelly Declaration at ¶ 13. For example, CME Group owns the following United States Trademark Registrations for its family of CME and CME-formative marks, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, the "CME Registrations"):

| Mark | Reg. No. | International Class(es) | Status |
|---|---|---|---|
| CME® | 1,085,681 | 36 | Incontestable |
| CME® | 3,084,640 | 9 & 42 | Incontestable |
| CME GROUP® | 3,367,684 | 36 | Incontestable |
| cme Chicago Mercantile Exchange ® | 3,075,976 | 9 & 42 | Incontestable |
| cme Chicago Mercantile Exchange ® | 2,991,670 | 36 | Incontestable |
| CME ILINK® | 2,831,871 | 36 | Incontestable |
| CME E-MINI® | 2,969,966 | 36 | Incontestable |
| CME LEAN HOG INDEX® | 2,973,035 | 36 | Incontestable |
| CME FEEDER CATTLE INDEX® | 2,990,297 | 36 | Incontestable |
| CME DATAMINE® | 3,352,992 | 36 | Incontestable |
| CME HURRICANE INDEX® | 3,766,454 | 36 | Incontestable |
| CME DATAPOINT® | 4,130,632 | 36 | Incontestable |
| CMECE® | 4,060,843 | 36 | Incontestable |
| CME CLEARING EUROPE® | 4,035,463 | 36 | Incontestable |
| CME GLOBEX® | 3,193,924 | 36 | Incontestable |
| CME DATACLOUD® | 4,254,542 | 36 | Registered |
| CME CORE® | 4,472,606 | 42 | Registered |
| CME DIRECT® | 4,358,467 | 9, 36 & 42 | Registered |
| CME GROUP® | 4,455,078 | 9, 36 & 42 | Registered |

CONFIDENTIAL – FILED UNDER SEAL

| ⊕ CME Group ® | 4,544,077 | 9, 36 & 42 | Registered |
|---|---|---|---|
| CME CLEARPORT® | 4,535,988 | 9, 36 & 42 | Registered |
| CME GLINK® | 4,343,012 | 38 | Registered |
| CME DIRECT MESSENGER® | 4,433,547 | 42 | Registered |
| CME STP® | 4,851,862 | 36 and 42 | Registered |
| CME DIRECT MOBILE® | 5,218,706 | 9 | Registered |
| CME EUROPE® | 5,370,376 | 36 & 42 | Registered |
| CME GROUP FOUNDATION ® | 4,961,334 | 36 | Registered |
| CME MESSENGER® | 5,023,757 | 9 & 42 | Registered |
| CME PIVOT® | 5,376,163 | 9, 35, 38 & 42 | Registered |
| CME FX$INDEX® | 5,211,897 | 36 | Registered |

*Id.* Copies of the Certificates of Registration and USPTO Trademark Status and Document Retrieval ("TSDR") printouts for these CME Registrations are attached to the Kelly Declaration as Exhibit E. *Id.*

CME Group also owns the following United States Trademark Registrations for the marks CBOT, NYMEX, COMEX, ⊕, CLEARPORT, GLOBEX, CHICAGO MERCANTILE EXCHANGE, E-MINI, PIVOT, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE, among other marks and registrations, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, "Registrations"):

| Mark | Reg. No. | International Class(es) | Status |
|---|---|---|---|
| CBOT® | 1,716,422 | 36 | Incontestable |
| NYMEX® | 1,731,593 | 36 | Incontestable |
| NYMEX® | 2,656,475 | 36 | Incontestable |
| NYMEX® | 3,436,974 | 36 | Incontestable |
| COMEX® | 1,036,378 | 36 | Incontestable |
| COMEX® | 5,483,800 | 36 | Registered |
| ⊕ ® | 1,303,096 | 36 | Incontestable |
| ⊕ ® | 4,369,249 | 9, 36 & 42 | Registered |

CONFIDENTIAL – FILED UNDER SEAL

| CLEARPORT® | 3,388,102 | 9, 36 & 42 | Incontestable |
|---|---|---|---|
| GLOBEX® | 1,576,888 | 41 | Incontestable |
| GLOBEX® | 2,448,961 | 36 | Incontestable |
| GLOBEX® | 4,684,887 | 36 | Registered |
| GLOBEX® | 5,166,758 | 9 | Registered |
| CHICAGO MERCANTILE EXCHANGE® | 1,085,682 | 36 | Incontestable |
| E-MINI® | 2,969,965 | 36 | Incontestable |
| PIVOT® | 3,569,041 | 9, 35, 38 & 42 | Incontestable |
| CHICAGO BOARD OF TRADE® | 2,403,561 | 36 | Incontestable |
| NEW YORK MERCANTILE EXCHANGE® | 2,713,052 | 36 | Incontestable |
| NEW YORK MERCANTILE EXCHANGE® | 1,847,455 | 36 | Incontestable |
| NEW YORK MERCANTILE EXCHANGE® | 1,775,460 | 36 | Incontestable |

Kelly Declaration at ¶ 14. Copies of the Certificates of Registration and USPTO TSDR printouts for these Registrations are attached to the Kelly Declaration as Exhibit F.

CME Group's federal registrations CME®, CME GROUP®, CBOT®, NYMEX®, COMEX®, CME ILINK®, CME E-MINI®, E-MINI®, CME LEAN HOG INDEX®, CME HURRICANE INDEX®, CME DATAPOINT®, CMECE®, CME CLEARING EUROPE®, CME DATAMINE®, CME GLOBEX®, CME FEEDER CATTLE INDEX®, CLEARPORT®,

CME GLOBEX®, GLOBEX®,  ®, CHICAGO MERCANTILE EXCHANGE®, PIVOT®, CHICAGO BOARD OF TRADE®, AND NEW YORK MERCANTILE EXCHANGE® are incontestable under 15 U.S.C. §1065. Kelly Declaration at ¶ 15. CME Group's incontestable registrations are conclusive evidence of the validity of the marks listed in the registrations, CME Group's ownership of the marks, and CME Group's exclusive right to use the marks in commerce in connection with the identified goods and services. 15 U.S.C. § 1115(b). *Id.*

CME Group also owns the following pending United States trademark applications,

CONFIDENTIAL – FILED UNDER SEAL

which were legally and validly filed with the USPTO (collectively, the "Applications"):

| Mark | App. No. | International Class(es) | Status |
|------|----------|------------------------|--------|
| CME FX LINK | 87/689,907 | 36 | Allowed |
| CME FX SPOT | 87/155,844 | 9, 36 & 42 | Allowed |
| CME CLEARCHAIN | 87/141,695 | 9, 35, 36 & 42 | Allowed |
| E-MINI | 87/593,364 | 36 | Allowed |
| CME | 88/087,268 | 36 | Filed |
| CME DATAMINE | 87/749,572 | 42 | Allowed |
| CME MARKET SENTIMENT METER | 87/954,026 | 9, 36 & 42 | Filed |
| CME OIS | 87/953,899 | 36 | Filed |
| CME SOFR | 87/953,901 | 36 | Filed |
| CME ULTRA | 87/953,897 | 36 | Filed |
| CME VIRTUAL HUB | 87/953,895 | 42 | Filed |
| CME VIRTUAL HUB | 87/953,893 | 38 | Filed |

Kelly Declaration at ¶ 16. Copies of the current USPTO TSDR printouts for the CME Applications are attached to the Kelly Declaration as Exhibit G.

In addition, CME Group owns foreign trademark registrations for the CME® mark in more than thirty foreign jurisdictions and for the CME GROUP® mark in more than fifteen jurisdictions, including but not limited to Russia, Argentina, Australia, Brazil, Canada, China, European Community, Hong Kong, India, Japan, Korea, Macau, Malaysia, Mexico, the Philippines, Singapore, and the United Kingdom. Kelly Declaration at ¶ 17. These registrations are valid, subsisting and in full force and effect. Id. The marks reflected in the CME Registrations, Registrations, CME Applications, and CME Group's extensive common law rights are hereinafter referred to as the "CME Marks." Kelly Declaration at ¶ 18.

The success of CME Group's financial and related services is due, in part, to the extensive promotion and advertising they have undertaken for the CME Marks. The CME Group Website prominently uses the CME Marks, and these marks act as a source identifier and as a symbol of CME Group's integrity and expertise. Kelly Declaration at ¶

CONFIDENTIAL – FILED UNDER SEAL

20. CME Group annually spends millions of dollars on advertising, marketing and promotional efforts related to the CME Marks. Kelly Declaration at ¶ 21.

CME Group's extensive use and advertising of the CME Marks has resulted in consumer recognition that the CME Marks identify CME Group as the source of premier financial exchange services, financial information and market data services, risk management services, and trading platform goods and services. *Id.* The CME Marks are assets of incalculable value as identifiers of CME Group's goods and services, and goodwill. *Id.*

The CME Marks are inherently distinctive and well-known for CME Group's goods and services, and valuable consumer goodwill exists in the CME Marks. *Id.* at ¶ 19. Therefore, the CME Marks are strong, protectable trademarks that are entitled to a broad scope of protection. *Id.* at ¶ 22. The CME Marks symbolize an exceptional level of quality, reliability, and trustworthiness, which are crucial qualities in the financial trading and market data services fields. *Id.* at ¶ 19. Such goodwill was generated long before Defendants' adoption and use of the marks identical or confusingly similar to the CME Marks.

## C. Defendants' Unlawful and Intentional Infringement of CME Group's Intellectual Property

CME Group regularly protects the fame and reputation of the CME Marks in the financial field. As part of CME Group's consistent intellectual property enforcement activities, CME Group regularly investigates infringing use of its CME Marks and aggressively protects its rights in the marketplace. Kelly Declaration at ¶¶ 22-23; Franklin Declaration at ¶ 7.

On January 8, 2019, an individual contacted CME Group directly via the support

11

**CONFIDENTIAL – FILED UNDER SEAL**

form on CME Group's website to confirm if the domain name <CMEgroupcenter.com> ("CMEgroupcenter Domain Name") and the associated website at www.CMEgroupcenter.com ("CMEgroupcenter Counterfeit Website") were affiliated with CME Group. Franklin Declaration at ¶ 8. The CMEgroupcenter Domain Name and CMEgroupcenter Counterfeit Website incorporate the CME® and CME GROUP® marks. *Id.* at ¶ 10; Declaration of Luis Moreau ("Moreau Declaration") at ¶ 22. The CMEgroupcenter Domain Name was registered in October 2018 and the website likely began operations in December 2018. *See* Franklin Declaration, Exhibit D; *see also* Moreau Declaration, Exhibit C.

On February 13, 2019, CME Group identified a new domain registration for <CMErussian.com> ("CMErussian Domain Name") and the associated website at www.CMErussian.com ("CMErussian Counterfeit Website"). Moreau Declaration at ¶¶ 3 & 23. The CMErussian Domain Name and CMErussian Counterfeit Website incorporate the CME® mark. *Id.* at ¶ 24. The CMErussain Domain Name was registered on February 5, 2019 and the website likely began operations in February 2019. *Id.* at ¶¶ 23-25; Moreau Declaration, Exhibit C.

At first glance, the CMEgroupcenter Counterfeit Website and the CMErussian Counterfeit Website (collectively, the "Counterfeit Websites") appeared to be affiliated with CME Group's genuine CME Group Website. *Id.* The home pages of the Counterfeit Websites include the CME Group logo in the upper left-hand corner and contains links "Войти" and "Регистрация" in the upper right corner (the "Login Links"). Moreau Declaration at ¶ 8. Printouts of the "Login Links" of the Counterfeit Websites as they appeared on February 13, 2019 are attached to the Moreau Declaration as Exhibits D

CONFIDENTIAL – FILED UNDER SEAL

and E. The Counterfeit Websites depict many of the CME Marks, including CME, CME

GROUP, ⊕CME Group , 🌐 , CME GLOBEX, GLOBEX, NYMEX, COMEX, CME

CLEARPORT, CLEARPORT, CME DATAMINE, CME DIRECT, CME PIVOT, PIVOT,

CBOT, and E-MINI. The Counterfeit Websites reproduce CME Copyrighted Materials,

such as entire descriptions of CME Group, its offerings, products and services.

Below is a side-by-side comparison of the CME Group Website and the Counterfeit

Websites:

*Side by side comparison of the CME Group Website and the
CMEgroupcenter Counterfeit Website*



CONFIDENTIAL – FILED UNDER SEAL



https://web.archive.org/web/20181009175719/https://www.cmegroup.com/

https://cmegroupcenter.com/

CONFIDENTIAL – FILED UNDER SEAL

*Side by side comparison of the CME Group Website and the
CMErussian Counterfeit Website*



CONFIDENTIAL – FILED UNDER SEAL



As shown above, there are several mirror images which Defendants have copied from the CME Group Website. *See* Moreau Declaration, Exhibit W. Notably, Defendants have added a Russian location on the Counterfeit Websites in an attempt to establish credibility for the Counterfeit Websites. *Id.* In addition to other copying, the Counterfeit Websites have also copied several articles and dropdown menus from the CME Group Website. *Id.* at ¶ 6.

The top right of the homepages of the Counterfeit Websites provide the Login Links. Upon clicking the link "Войти"—the Russian word for "login"—the user arrives at a page requiring the user's email address and password. Moreau Declaration at ¶ 8. Copies

CONFIDENTIAL – FILED UNDER SEAL

of these pages are attached as Exhibit D to the Moreau Declaration. Upon clicking the link "Регистрация"—the Russian word for "register"—the user arrives at a page that requests personal information such as the user's full name, email, phone number, Skype name, password, password confirmation, payment system (i.e., PerfectMoney, AdvancedCash, Payeer, and cryptocurrencies), requisites, and identity code of the inviter. *Id. See* Moreau Declaration, Exhibit E. CME Group sent a series of demand letters and takedown notices to Defendants Chechurin, GoDaddy and OVH, but the letters did not achieve the requested relief, i.e., shut down the CMEgroupcenter Counterfeit Website. Moreau Declaration at ¶¶ 13-24.

On February 1, 2019, internet privacy company Domains By Proxy, LLC (Domains By Proxy") agreed to release the information for the registrant of the CMEgroupcenter Domain Name. Moreau Declaration at ¶ 22. Domains By Proxy identified Konstantin Chechurin as the registrant of the CMEgroupcenter Domain Name. *Id.* Domains By Proxy identified Konstantin Chechurin's email address as <wallet.145@gmail.com>. *Id.* As of February 13, 2019, the ICANN WHOIS database identified Dmitro Nagovskiy as the registrant of the CMErussian Domain Name. *Id.* at ¶ 24. The WHOIS record identifies Dmitro Nagovskiy's email address as <nagovskiydmitriy@gmail.com>. *Id.* See Moreau Declaration, Exhibits A and T. The registrar of the CMEgroupcenter Domain Name is GoDaddy.com, LLC, and the CMEgroupcenter Counterfeit Website is hosted by French Internet Service Provider OVH SAS. Moreau Declaration at ¶ 15; Franklin Declaration at ¶ 8. In addition, the ICANN WHOIS record for the CMErussian Domain Name identifies GoDaddy.com, LLC as the domain name registrar and reveals the CMErussian Counterfeit Website is hosted by Dutch Internet Service Provider Webzilla B.V. Moreau

CONFIDENTIAL – FILED UNDER SEAL

Declaration at ¶ 25; Franklin Declaration at ¶ 9.

**D.     Defendants' Elaborate Fraudulent and Phishing Scheme**

The Counterfeit Websites lure customers into believing they are visiting the legitimate and authentic CME Group Website, when they are not. Not only have the Counterfeit Websites created a look and feel similar to the CME Group Website, but they also offer the Login Links that are plainly set-up to illegally capture login information from unsuspecting CME Group customers. Defendants have the capability to store this information and use it for their own nefarious purposes.

CME Group believes Defendants Nagovskiy, Chechurin and DOES 1-3 are related, acting in cooperation, and use the Infringing Domain Names and Counterfeit Websites as part of the same, coordinated scheme. First, the Infringing Domain Names were registered in close temporal proximity, and the Counterfeit Websites use the identical or nearly identical HTML source code as each other and are visually very similar. In fact, this source code is identical or nearly identical to the source code for the genuine CME Group Website (although parts are translated into Russian). *See* Franklin Declaration at ¶ 12, Exhibit F; Moreau Declaration at ¶ 27, Exhibit W. For example, the Counterfeit Websites copy the entire description "CME Group is the world's leading and most diverse derivatives marketplace offering the widest range of futures and options products for risk management" and include a number of the CME Marks in the keywords used. *Id.* Second, the Counterfeit Websites copied text, images, photographs, design, layout, and other features from the genuine CME Group Website and include the identical Global Office contact pages in English and they both added a contact address in Russia. Franklin Declaration at ¶ 13. Third, the Counterfeit Websites adopt the same type of

CONFIDENTIAL – FILED UNDER SEAL

fraudulent financial scheme whereby they seek to encourage people to register on the Counterfeit Websites in exchange for promises of large returns on investments. After the victims submit money for investment purposes, they never receive their original money back. *Id.* at ¶ 14. Multiple social media posts promote the investment of money through the Counterfeit Websites. Franklin Declaration at ¶¶ 16-20, Exhibit G.

The Infringing Domain Names are confusingly similar to the CME Marks, and Defendants have no legitimate or good faith basis to register and use the CME Marks in the Infringing Domain Names or in the content of the Counterfeit Websites. Nor do Defendants have legitimate reason to reproduce the CME Copyrighted Materials in connection with the Counterfeit Websites. Defendants' intent in registering the Infringing Domain Names and setting up the Counterfeit Websites was to profit from the goodwill and value associated with the CME Marks by causing harm to CME Group and the entire public and to tarnish or disparage the goodwill associated with the CME Marks.

Presently, CME Group has no ability to control the nature and quality of content provided under the CME Marks at the Counterfeit Websites. Effectively, CME Group's stellar reputation and goodwill is placed in the hands of unscrupulous third parties.

### E.    Defendants Are Causing CME Group Irreparable Harm

Defendants' activities are causing irreparable harm to CME Group. It is crucial for a financial institution to have a reliable and trustworthy reputation. For decades, CME Group has sought to be a true leader in the financial services industry. As a result of these efforts, CME Group has earned its place as a trustworthy provider of cutting-edge financial products and services. CME Group has become an iconic company in the financial industry and world financial markets.

CONFIDENTIAL – FILED UNDER SEAL

In addition, in the course of its investigation, CME Group was contacted by at least one victim who lost money by investing money through the Counterfeit Websites and CME Group was contacted by another individual that was seeking to validate an unsolicited request for money that was received related to the Counterfeit Websites. Franklin Declaration at ¶¶ 21-23. CME Group also identified online consumer reviews of victims of this illicit financial scheme related to the Counterfeit Websites. *Id.* This further demonstrates the actual harm that is suffered.

Defendants' unauthorized use of the CME Marks and CME Copyrighted Materials irreparably harms CME Group's integrity through damage to the CME Group reputation, diminished goodwill, loss of exclusivity and control over use, and possible diversion of sales. Kelly Declaration at ¶¶ 34-35. Moreover, the dollar value of the harm resulting from Defendants' actions cannot be calculated with any degree of precision. Consequently, harm suffered by CME Group cannot be adequately compensated though monetary damages. Instead, CME Group is left with a potentially diminished reputation caused by Defendants' fake website. More importantly, the use of captured user IDs and passwords can potentially compromise customer data, lead to access of confidential information, and adversely impact CME Group systems and operations. CME Group customers rely upon their user IDs and passwords to gain access to different systems. Absent a temporary restraining order, there is nothing to prevent the theft of these user IDs and passwords. Kelly Declaration at ¶¶ 35-36. Not only will customers be exposed, but CME Group's reputation and goodwill will be undermined. *Id.* CME Group's injuries are and will continue to be irreparable, unless the Defendants' infringing actions are enjoined.

CONFIDENTIAL – FILED UNDER SEAL

## III. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

The Seventh Circuit applies the same standard for granting a temporary restraining order as that for granting a preliminary injunction. *Domanus v. Lewicki*, 857 F. Supp. 2d 719, 723 (N.D. Ill. Apr. 13, 2012) (citations omitted). A party seeking to obtain a temporary restraining order must demonstrate: (1) that its case has *some* likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2000) (emphasis added). If the court is satisfied that these three conditions have been met, it then must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the court must consider the non-party public interest in denying or granting the injunction. *Id.*

The court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). In doing so, the court employs a "sliding scale approach": the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.*

## IV. ARGUMENT

### A. CME Group Is Likely to Succeed on the Merits

To succeed on this first element, CME Group must only show that it has a "better than negligible" chance of succeeding on the merits. *Ty*, 237 F.3d at 897. CME Group's evidence well exceeds this threshold.

CONFIDENTIAL – FILED UNDER SEAL

1. **CME Group Is Likely to Succeed on its Trademark Infringement and Trademark Counterfeiting Claims**

To prove a likelihood of success on its trademark infringement claim under Section 43(a) of the Lanham Act, CME Group must establish: (1) it has protectable trademarks, and (2) a likelihood of confusion as to origin of the Defendants' services. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).

a. <u>CME Group Owns Protectable and Registered Trademarks</u>

As established above, CME Group has extensively and continuously used and owns protectable trademark rights in the CME Marks, including U.S. registrations for CME, CME GROUP, ⊕**CME Group**®, CBOT, NYMEX, COMEX, 🌐, CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE marks. Moreover, the CME®, CME GROUP®, CBOT®, NYMEX®, COMEX®, E-MINI®, CME DATAMINE®, CME GLOBEX®, CLEARPORT®, GLOBEX®, 🌐 ®, CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF TRADE®, NEW YORK MERCANTILE EXCHANGE® and PIVOT® marks are the subject of incontestable U.S. trademark registrations. Under, 15 U.S.C. §§ 1115(a) & (b), incontestable registrations are conclusive evidence of the validity of the marks listed in the registrations, CME Group's ownership of the marks, and CME Group's exclusive right to use the marks in commerce in connection with the identified goods and services. *Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*, 856 F. Supp. 472, 475 (N.D. Ill. 1994).

CONFIDENTIAL – FILED UNDER SEAL

CME Group has established its protectable rights in the CME Marks.

b.    <u>There is a Likelihood of Confusion</u>

In determining the existence of a likelihood of confusion as to origin of Defendants'
goods and services, the Seventh Circuit examines seven factors. *Sorensen v. WD-40
Co.*, 792 F.3d 712, 726 (7th Cir. 2015). As discussed below, these factors demonstrate
that confusion is likely in light of the use of identical marks for identical goods and
services.

(1)    *The Marks Are Identical in Appearance and
Suggestion*

The marks at issue are identical, so consumer confusion is inevitable. *See, e.g.,
MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 832 (N.D. Ill. 2009) (the court found
that because the infringing domain names Mastercard.com (with the "Mastercard"
position in Hindi) and Mastercard.com so resembled the MASTERCARD marks in sight,
sound and appearance that confusion was inevitable). The Infringing Domain Names use
the registered CME® and CME GROUP® marks without authorization. Similarly, the
Counterfeit Websites use the CME®, CME GROUP®, ⬤ **CME Group**®, CBOT®,

NYMEX®, COMEX®, ⊕ ®, CME CLEARPORT®, CLEARPORT®, E-MINI®, CME
GLOBEX®, GLOBEX®, CME DIRECT®, CME STP®, CME PIVOT®, PIVOT®, CME
DATAMINE®, CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF
TRADE®, and NEW YORK MERCANTILE EXCHANGE® trademarks (among others)
without authorization. Thus, the first factor indisputably weighs in favor of issuance of a
temporary restraining order.

23

CONFIDENTIAL – FILED UNDER SEAL

(2)   *The Similarity of the Products and Services*

Likewise, the services at issue are identical. The Counterfeit Websites purport to provide financial exchange, financial information and financial market-related services, which are the very services covered by the CME Group's trademark registrations for CME®, CME GROUP®, CBOT®, NYMEX®, COMEX®, E-MINI®, CME DATAMINE®, CME GLOBEX®, CLEARPORT®, GLOBEX®,  ®, CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF TRADE®, NEW YORK MERCANTILE EXCHANGE® and PIVOT®. Thus, consumer confusion is inevitable. *Id.* Therefore, the second factor heavily favors the issuance of a temporary restraining order.

(3)   *The Area and Manner of Concurrent Use*

CME Group's use and Defendants' use are certainly concurrent. Both CME Group and Defendants are operating in the worldwide financial sector and are present on the internet. Consumers all over the world use CME Group's online services and, consequently, Defendants have decided to similarly operate online in conducting their fraudulent phishing scheme. Therefore, there is an incredible amount of overlap between CME Group's and Defendants' trade channels. Thus, the third factor weighs in favor of the issuance of a temporary restraining order.

(4)   *The Degree of Care Likely to be Exercised by Consumers*

The degree of care factor weighs in favor of the trademark holder when consumers are less likely to exercise care in distinguishing products, but confusion is less likely when consumers are deliberate, sophisticated, and are affluent purchasers of goods and

CONFIDENTIAL – FILED UNDER SEAL

services. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001); *see also Lincoln Fin. Advisors Corp. v. SagePoint Fin., Inc.*, 1:09-cv-15RM, 2009 U.S. Dist. LEXIS 28142, at *18 (N.D. Ill. Apr. 2, 2009). However, "when there is a strong likelihood of confusion created by other facts, even a high level of care exercised by an ordinary purchaser in a certain setting will not be sufficient to tip the scales in the other direction." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:95 (5th ed.).

Here, although financial consumers arguably use a high level of care, such a level of care is insufficient to overcome the likelihood of confusion created by the other factors (namely, the identical marks and identical services). Even the most prudent financial consumer could be duped by Defendants' phishing scheme because Defendants have meticulously crafted the Counterfeiting Websites to use marks identical to the CME Marks for identical services. Therefore, this factor also weighs in favor of the issuance of the temporary restraining order.

(5)     *The Strength of CME Group's Marks*

As established above, CME Group owns very strong trademark rights in the CME Marks through long-standing use and promotion. For example, CME Group has used the CME® mark for 100 years. Moreover, the CME®, CME GROUP®, CBOT®, NYMEX®, COMEX®, E-MINI®, CME DATAMINE®, CME GLOBEX®, CLEARPORT®, GLOBEX®,

 ®, CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF TRADE®, NEW YORK MERCANTILE EXCHANGE® and PIVOT® trademarks are the subject of the incontestable U.S. trademark registrations, which "constitute[s] conclusive evidence of ownership and validity." 15 U.S.C. §§1115(a) & (b); *Brach Van Houten Holding, Inc.*,

CONFIDENTIAL – FILED UNDER SEAL

856 F. Supp. at 475. As a result of CME Group's extensive use and promotion of its CME Marks, these marks became famous long before Defendants' infringing actions. Moreover, the CME Marks are inherently distinctive. Therefore, this factor heavily weighs in favor of issuance of the temporary restraining order.

(6)   <em>Evidence of Actual Confusion</em>

Evidence of actual confusion is not required to show a likelihood of confusion. *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 111, 1118 (7th Cir. 1997); *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:12 (5th ed.) (stating that "…a plaintiff who seeks only injunctive relief need only prove a likelihood of confusion"). However, here, there is evidence of actual confusion. Individuals have contacted CME Group directly regarding confusion and multiple online users have raised concerns regarding the confusion between CME Group and the Counterfeit Websites. As a result, this factor heavily favors the issuance of a temporary restraining order.

(7)   <em>Defendants' Clear Intent to Palm Off Their Services<br/>as That of CME Group</em>

"[T]he defendant's intent is relevant to the issue of likelihood of confusion only if he intended to palm off his products as those of another, thereby profiting from confusion." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992). The present case illustrates the clear intent of Defendants to palm off their services as those of CME Group. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (stating that bad faith may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety). The entire purpose of the Counterfeit Websites is an attempt to recreate the legitimate CME Group Website, thereby luring visitors into

26

CONFIDENTIAL – FILED UNDER SEAL

believing they are dealing with CME Group, when they are not. Through the use and operation of the Counterfeit Websites, Defendants seek to illegitimately capture customer information and data and steal money from unsuspecting victims. Because of the Defendants' willful conduct, this factor weighs heavily in favor of a finding of confusion and an issuance of the temporary restraining order. *Id.* (stating that a defendant's bad faith intent in adopting a trademark is given considerable weight in the likelihood of confusion analysis); *see also Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1219 (7th Cir. 1997).

c.    This Is a Clear Case of Trademark Counterfeiting

The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. In the present instance, Defendants use the identical registered CME, CME GROUP,

 ,  , CBOT, NYMEX, COMEX, GLOBEX, CME GLOBEX, CLEARPORT, CME CLEARPORT, E-MINI, CME PIVOT, PIVOT, CME DIRECT, and CME DATAMINE trademarks in connection with services, namely, financial exchange services, covered by the U.S. registrations for these marks. This is a clear case of counterfeiting. Accordingly, CME Group is likely to succeed on the merits of its trademark counterfeiting and trademark infringement claims.[1]

---

[1] Because CME Group is likely to succeed on the merits of its federal trademark infringement claim, as a matter of law, it is also likely to succeed on Counts IV, IX, and XI. *See TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) (stating that elements of state and federal law trademark infringement and unfair competition claims are substantially congruent). CME Group's requested relief herein does not extend to Counts III & XII for dilution and Count X for consumer fraud.

27

CONFIDENTIAL – FILED UNDER SEAL

### 2. CME Group Is Likely to Succeed on its Cybersquatting Claim

To establish that CME Group is likely to succeed on the merits for its cybersquatting claim, CME Group must show that: (1) Defendants have registered, trafficked in, or used domain names; (2) the domain names are identical to or confusingly similar to marks owned by CME Group; (3) the marks were distinctive or famous at the time of Defendants' registration of the domain names; and (4) Defendants have committed the acts with a bad faith intent to profit from CME Group's marks. 15 U.S.C. § 1125(d)(1)(A); *Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672, 677 (N.D. Ill. 2006); *Tory Burch LLC v. Does 1-100*, 12-C-7163, 2012 WL 4581409 (N.D. Ill. Oct. 2, 2012). Here, Defendants Nagovskiy and Chechurin registered and used the Infringing Domain Names, which are identical or confusingly similar to the famous and distinctive CME® and CME GROUP® trademarks, which were famous prior to the acts of the Defendants.

In addition, consideration of the nine statutory factors confirms that Defendants Nagovskiy and Chechurin have acted in bad faith. 15 U.S.C. § 1125(d)(1)(B). First, Defendants Nagovskiy and Chechurin have no legitimate rights in the CME® and CME GROUP® marks and CME Group has not authorized Defendants Nagovskiy and Chechurin to use the marks. Second, the Infringing Domain Names do not consist of legal or other common names of Defendants Nagovskiy and Chechurin. Third, Defendants Nagovskiy and Chechurin have not previously used the Infringing Domain Names in connection with bona fide offerings of any goods and services. Instead, they were registered solely for the purpose of the infringement of CME Group's rights. Fourth, use of the CME® and CME GROUP® marks with the Counterfeit Websites by Defendants Nagovskiy and Chechurin is commercial. Fifth, by registering the Infringing Domain

CONFIDENTIAL – FILED UNDER SEAL

Names, Defendants Nagovskiy and Chechurin intended to divert consumers from the CME Group Website to their Counterfeit Websites. Their actions harmed, and will continue to harm, goodwill represented by the CME Marks and created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Counterfeit Websites. Finally, the CME® and CME GROUP® marks are highly distinctive and famous. Based on the foregoing, CME Group is likely to succeed on the merits of the cybersquatting claim.

### 3.   CME Group is Likely to Succeed on its Copyright Infringement Claim

To succeed on its copyright infringement claim, CME Group need only show that (1) it owns valid rights in copyrightable subject matter, (2) Defendants copied the works without authorization, and (3) Defendants' infringing works are substantially similar to that of CME Group's works. *See* 17 U.S.C. § 106; *see also Tillman v. New Line Cinema Corp.*, No. 08-1667, 2008 WL 4488204 (7th Cir. Oct. 7, 2008). CME Group owns exclusive and valid copyrights in the CME Copyrighted Materials, which is original copyrightable subject matter. The CME Copyrighted Materials is the subject of U.S. Copyright Registrations and pending U.S. Copyright Applications. Defendants Nagovskiy, Chechurin and Does 1-3 had access to the CME Copyrighted Materials, as it was available via the Internet at the CME Group Website. Without permission or authorization from CME Group, Defendants Nagovskiy, Chechurin and Does 1-3 unlawfully reproduced and displayed the CME Copyrighted Material on the Counterfeit Websites. Attached to the Moreau Declaration as Exhibit X is a chart demonstrating the substantial similarities between the CME Copyrighted Materials and the Counterfeit Websites. As a result, CME Group is likely to succeed on its copyright infringement claim.

CONFIDENTIAL – FILED UNDER SEAL

### 4. CME Group is Likely to Succeed on its Phishing Claim

Defendants Chechurin and Nagovskiy created the Counterfeit Websites and solicit or request users to provide identifying information, such as a password and PIN, without any authority or approval from CME Group in violation of the Illinois Anti-Phishing Statute, 740 Ill. Comp. Stat. 7/10. The evidence clearly shows that the Defendants Chechurin and Nagovskiy use the Counterfeit Websites for such purposes, and as a result, CME Group is likely to succeed on its phishing claim.

### B. CME Group Has No Adequate Remedy at Law and Irreparable Harm is Likely if the TRO is Not Entered

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *see also Int'l Kennel Club of Chicago, Inc.*, 846 F.2d at 1092 (stating "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of defendants' goods"). Here, the Seventh Circuit has a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Labs*, 971 F.2d at 12 (explaining that the more likely it is that a plaintiff will succeed on the merits, then the less the balance of irreparable harms must favor the plaintiff's position); *see also Checker Car Club of America, Inc., v. Fay*, 262 F. Supp. 3d 621 (N.D. Ill. 2017) (confirming that harm to a trademark owner's goodwill is considered "presumptively irreparable" in trademark infringement actions); *Kraft Foods Group Brands LLC, v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("irreparable harm is especially likely in a

CONFIDENTIAL – FILED UNDER SEAL

trademark case because of the difficulty of quantifying the likely effect on a brand of nontrivial period of consumer confusion").

The irreparable harm is not just likely if the temporary restraining order is not issued, but irreparable harm is ongoing and severe. The Counterfeit Websites are not legitimate enterprises and Defendants' unauthorized use of the CME Marks has and will continue to irreparably harm CME Group through damage to the CME Group reputation, diminished goodwill, loss of exclusivity and control over use, and possible diversion of sales. Kelly Declaration at ¶ 35. CME Group has already been contacted by individuals inquiring about the connection or affiliation between CME Group and the Counterfeit Websites and other individuals report being victims of this financial scam. More importantly, CME Group will suffer losses associated with the use of captured user IDs and passwords, which can potentially compromise customer data, lead to the access of confidential information, and adversely impact the integrity of CME Group systems and operations. CME Group's loss of control over its reputation is neither calculable nor precisely compensable, and the extent of the resulting harm to CME Group's reputation and goodwill (and the possible diversion of customers) is largely unquantifiable. Any inferior quality services or products provided by Defendants' under the CME Marks will result in increased skepticism and hesitation from consumers when presented with CME Group's legitimate goods and services. Moreover, the theft of a customer's personal information under the CME Marks will undoubtedly destroy the relationship and trust that CME Group has worked so hard to establish. As a result, there will be further loss or undermining of CME Group's goodwill by these acts.

CME Group customers and the public alike rely upon the Internet each and every

day to transact business, conduct shopping, organize finances, access information and a variety of other tasks. In doing so, they rely upon the use of user IDs and passwords to gain access to different systems. Absent a temporary restraining order, there is nothing to prevent the theft of these user IDs and passwords from the Counterfeit Websites. Once the password is taken or an identity is stolen, it cannot be retrieved and no amount of money can compensate such harm. It generally takes a long time to build a reputation, but such a reputation can be lost quite quickly. This harm is not quantifiable and the harm extends beyond CME Group to the public at large that are potential victims of this illicit phishing scheme.

The harm is present here because Defendants are operating an illicit financial scheme that seeks to defraud victims of money. As described above, the Counterfeit Websites are used as way to register potential victims, convince them to deposit money in return for promised investments that never materialize. As a result, the money deposited by the victim is never returned. The operation uses Instagram posts (likely associated with the Defendants Nagovskiy, Chechurin and Does 1-3) as a way to validate the overall scheme.

In the case of trademark counterfeiting, courts have routinely found such acts to result in irreparable harm and this situation is no different. *See, e.g.*, *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *8 (C.D. Cal. Oct. 19, 2015) (granting an Ex Parte Application for a Temporary Restraining Order because the evidence that SATA "is one of the world's leading manufacturers of high quality, high performance, paint spray guns and related equipment" and that SATA products are "well known for their quality, performance, and durability"

CONFIDENTIAL – FILED UNDER SEAL

demonstrated a likelihood of irreparable harm); *Hand & Nail Harmony, Inc. v. Guangzhou Cocome Cosmetics Co. Ltd.*, No. 2:14-cv-01106-RFB-CWH, 2014 WL 4809928, at \*7 (D. Nev. Sept. 26, 2014) ("There is little reason to believe at this time that Defendants will pay heed to any money damages awarded. The Plaintiffs will therefore suffer irreparable harm if the Defendants are not immediately restrained from the sale and distribution of these counterfeit goods at trade shows and online."); *Chanel, Inc. v. Chanelbagsforsale-US.com*, No. 1:12-cv-22076, 2012 WL 5364300, at \*5 (S.D. Fla. Oct. 31, 2012) (finding Defendants' counterfeit products on the Internet website chanelonlineshoppingusa.com created irreparable harm and confusion, particularly, because the counterfeit products bear identical markings as real Chanel merchandise, and are not manufactured to Chanel's quality standards).

All of these factors demonstrate that CME Group's injuries are, and will continue to be, irreparable, unless Defendants' calculated acts of infringement and counterfeiting are enjoined.

### C. The Balance of Harms Tips in CME Group's Favor

Because CME Group demonstrated (1) a likelihood of success on the merits; (2) that there is no adequate remedy at law; and (3) that it will suffer irreparable harm, the Court should balance the harms to be suffered by both parties if the preliminary relief is granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813-14 (7th Cir. 2002) (where defendant used plaintiff's trademark on website that would continue to attract consumers and acquire goodwill belonging to plaintiff, the balance of the harms favored the plaintiff).

Defendants' willful actions were at their own peril because they have "no claim to the profits or advantages" derived from such conduct. *Burger King Corp. v. Majeed*, 805

CONFIDENTIAL – FILED UNDER SEAL

F. Supp. 994, 1006 (S.D. Fla. 1992) (citations omitted). "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Any harm to Defendants is purely monetary – to the extent such harm exists – and this harm would be ill-gotten gains through use of CME Group's intellectual property rights.

   As established above, Defendants have no legitimate need to use the CME Marks in connection with the Counterfeit Websites. Any and all such conduct is a clear violation of CME Group's registered trademark rights. Instead, Defendants created Counterfeit Websites bearing CME Group's registered CME Marks in a fraudulent attempt to deliberately mislead consumers and capture their information. Defendants also created the Counterfeit Websites bearing CME Group's registered CME Marks in an illicit scheme to steal money from unsuspecting victims. Absent a temporary restraining order, CME Group is unable to control its business reputation and goodwill. In fact, "the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Int'l Kennel Club*, 846 F.2d at 1088. CME Group has spent over one hundred years building, cultivating and protecting its CME brand. Without this temporary restraining order, CME Group risks losing the goodwill it has built up in this period. Effectively, CME Group's "entire investment" will be lost. *TV Land, L.P. v. Viacom Int'l, Inc.,* 908 F. Supp. 543, 554 (N.D. Ill. 1995).

   The potential harm to CME Group, particularly to its goodwill and reputation, is substantial and clearly outweighs the potential harm to Defendants, which is purely monetary, if any. Therefore, the balance of harms strongly favors CME Group.

CONFIDENTIAL – FILED UNDER SEAL

**D.**     **The Public Interest Favors Issuance of the Temporary Restraining Order**

The public interest is also served by the issuance of a temporary restraining order because "enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469. In the present instance, Defendants created fake websites that use the registered CME Marks without authorization. Customers looking for CME Group on the Internet will undoubtedly believe they reached CME Group when they arrive at Defendants' Counterfeit Websites. Moreover, these customers will provide their CME Group login information or provide other personally identifiable information, which will likely be used for nefarious purposes. In addition, CME Group has provided information regarding victims that provided money to Defendants in return for promised investments. These victims lost the money they gave to Defendants.

More than fifty years ago, the Seventh Circuit held "the trade-mark laws … are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). A temporary restraining order such as the one sought here would therefore prevent, rather than cause, harm to consumers through the elimination of confusion as to source and sponsorship. *See, e.g.*, *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274-75 (7th Cir. 1976); *Brach Van Houten Holding, Inc.*, 856 F. Supp. at 474. The injury to the public is clear, namely, the Counterfeit Websites give the false impression that they are sponsored, affiliated or endorsed by CME Group when they are not. The public has a right (1) not to be confused or defrauded as to the source of services offered by Defendants; (2) to engage in transactions over the internet with the comfort of security; and (3) to assume

CONFIDENTIAL – FILED UNDER SEAL

their passwords and personal information will not be compromised and their identities not stolen.

Unless this Court enjoins Defendants' conduct, the public will continue to be confused and misled. Therefore, the granting of this temporary restraining order is in the public interest.

### E.  CME Group's Requested Equitable Relief Is Appropriate

As set forth in CME Group's proposed order, CME Group seeks specific relief against the different Defendants. In doing so, CME Group seeks to minimize the harm and burden that could be imposed upon the different entities involved. Specifically, CME Group seeks to enjoin the conduct of Defendants Chechurin, Nagovskiy and Does 1-3 from engaging in further infringing acts. As identified below, CME Group seeks limited relief from defendants OVH SAS, GoDaddy.com, LLC, and Webzilla B.V. regarding immediate transfer of the Infringing Domain Names, operation of the Counterfeit Websites, service of expedited discovery and preservation of evidence.

### 1.  A Temporary Restraining Order Is Warranted in this Case

Based upon the foregoing, CME Group has demonstrated more than a sufficient basis warranting issuance of a temporary restraining order. CME Group's overwhelming evidence establishes that: (1) it will succeed on its claims; (2) it will continue to suffer irreparable harm absent a temporary restraining order; (3) the burden tips in CME Group's favor; and (4) the public interest favors issuance of the temporary restraining order. As a result, this Court is justified in enjoining Defendants' conduct and the issuance of the temporary restraining order is authorized by law. *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 791 (N.D. Ill. 2010) (temporary restraining

CONFIDENTIAL – FILED UNDER SEAL

order granted in favor of trademark plaintiff).

### 2.      An Order of Preservation Will Reduce the Irreparable Harm Being Caused

Where defendants are engaged in counterfeiting, "there is every reason to believe that, once served with notice of a lawsuit, they will not carefully preserve the evidence of their illegality." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:37 (5th ed.). CME Group seeks an immediate order preserving the relevant evidence in this case. Defendants have engaged in willful counterfeiting and have shown a propensity to ignore the law and conceal their identities. Defendants developed a scheme that causes irreparable harm to CME Group. As a result, there is a legitimate concern that they will do anything to cover their tracks, including destruction of evidence, cancellation of domain names, deletion of accounts with ISPs, etc. If this happens, CME Group will be prevented from uncovering the extent of the harm caused and retrieving the captured data.

Here, movement or destruction of the documentary evidence would render prosecution of the case much more difficult and would frustrate the ultimate relief CME Group seeks in this action. *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 5 (2d Cir. 1979) ("If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of 'notice,' and it is surely not what the authors of the rule either anticipated or intended"). To prevent these occurrences, CME Group requests an order that preserves all relevant evidence. In particular, CME Group seeks preservation of any and all records of Defendants, information captured by the ISPs based upon their hosting of the Counterfeit Websites, including login data, user information, data packets, and file

CONFIDENTIAL – FILED UNDER SEAL

directories, that will be critical in further investigation of this action. The ISPs will suffer no harm by entry of such an order.

Unlike traditional counterfeiting cases, CME Group cannot seek a seizure and inspection of the brick and mortar shop to obtain the counterfeit goods and relevant business records. Instead, this counterfeiting conduct takes places entirely over the Internet, making it more difficult to capture the key information, which reinforces the need for expedited discovery and order of preservation. This order for preservation would apply to all Defendants.

### 3.      CME Group Is Entitled to Expedited Discovery

Courts are granted broad authority over discovery, including the authority to grant the relief requested herein. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (district courts have broad discretion in matters relating to discovery); *see also Lawrence E. Jaffe Pension Plan v. Household International, Inc.*, No. 02 C 5893, 2005 WL 3801463, at *2 (N.D. Ill. April 18, 2005) (explaining that district courts have broad discretion in resolving matters related to discovery). CME Group established the irreparable harm it is suffering at the hands of Defendants. However, an injunction alone will not assist CME Group in assessing the potential damage associated with data captured from users of the Counterfeit Websites to operate the fraudulent financial scheme. This information can only be sought through discovery. There is no practical reason to delay such discovery. As a result, it is appropriate for this Court to order expedited discovery from the Defendants. This relief is in addition to the relief allowed under 17 U.S.C. § 512. This order for expedited discovery would apply to all Defendants.

CONFIDENTIAL – FILED UNDER SEAL

### 4. Immediate Domain Name Transfer Will Preserve the *Status Quo*

To preserve the status quo and prevent further harm, CME Group requests an order that the Infringing Domain Names be transferred to CME Group while this case is pending. This is the only course of action that preserves the *status quo*. In addition, CME Group will use the Counterfeit Websites to electronically publish notice of the case to Defendants. Absent such an order there is nothing to prevent Defendants from changing ownership details for the Counterfeit Websites, transferring domain name registrars, switching Internet Service Providers, and deleting the relevant data associated with the site, all of which will thwart CME Group's ability to seek relief from this Court. CME Group has demonstrated a strong likelihood of success on the merits and proved irreparable harm as a result of Defendants' conduct. Therefore, this relief is not only appropriate, but is necessary to ensure adequate relief can be sought.

District courts around the country, including in the Northern District of Illinois, have granted similar relief in trademark infringement cases where the plaintiff trademark owner has sought a temporary restraining order. *See, e.g.*, *CME Group Inc., et. al. v. Peter Jonhtham, et. al.*, 16-cv-4541, Dkt. No. 13 (N.D. Ill. April 26, 2016) (granting ex parte motion for temporary restraining order and ordering transfer of the domain names); *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029 (N.D. Ill. 2001) (granting preliminary injunction and ordering transfer of domain names); *see also Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000) (granting preliminary injunction and ordered transfer of the offending domain names to plaintiff "pending a resolution on the merits"). In *Ford*, the court granted the transfer based upon its authority under 15 U.S.C. § 1125(d)(1)(C), which provides "[i]n any civil action involving the registration, trafficking

CONFIDENTIAL – FILED UNDER SEAL

or use of a domain name, a court may order the forfeiture or cancellation of the domain name or transfer of the domain name to the owner of the mark." *Id.* at 468; *see also Deckers Outdoor Corporation v. Does 1-1281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (granting a temporary restraining order and ordering transfer of domain name); *Tory Burch, LLC, et. al. v. Yong Sheng Int'l Trade Co., LTD,* No. 1:10-cv-09336 (S.D.N.Y. Jan 4, 2011) (granting temporary restraining order and ordering transfer of domain name); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (granting temporary restraining order and ordering transfer of domain name); *Gucci America, Inc. and Louis Vuitton Malletier, S.A. v. Yan*, No. 10-cv-61512-WPD (S.D. Fla. Aug. 20, 2010) (granting temporary restraining order and ordering transfer of domain name).

Therefore, CME Group's request for an order requiring transfer of the Infringing Domain Names for the duration of this case is appropriate and should be granted.

## F.    No Bond is Required as the Risk of Harm to Defendants Is Low

Rule 65 of the Federal Rules of Civil Procedure calls for CME Group to post a bond in the event of harm to Defendants caused by issuance of the Temporary Restraining Order. Fed. R. Civ. P. 65(d). CME Group has established clear and overwhelming evidence of trademark infringement, trademark counterfeiting, cybersquatting, and copyright infringement. There is minimal harm to Defendants in issuance of this temporary restraining order, other than harm caused by their own willful acts. While the posting of a bond is required, courts are granted a wide latitude in setting the amount of the bond. *Nano-Proprietary, Inc. v. Keesman*, No. 06 C 2789, 2007 WL 433100 at *8 (N.D. Ill. 2007) (the amount of security bond for an injunction is in the discretion of the court). In the present case, no bond is required. The purpose of requiring the party obtaining an

CONFIDENTIAL – FILED UNDER SEAL

injunction to post security is to compensate the enjoined party, if it prevails on the merits, for the pecuniary harm caused by a preliminary injunction. *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). Here, there is no information to support any damages suffered by Defendants in issuance of this Temporary Restraining Order. As a result, it is appropriate to order no bond or at most, a $1,000 bond. *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065 (E.D. Wis. 2007) (finding $1,000 bond appropriate absent information from the parties to the contrary).

## V. CONCLUSION

For the foregoing reasons, CME Group respectfully requests that the Court grant CME Group's *Ex Parte* Motion for Temporary Restraining Order.


Dated:   March 6, 2019          By: _____
                                Joseph V. Norvell (Reg. No. 6225747)
                                Joseph T. Kucala, Jr. (Reg. No. 6275312)
                                Matthew D. Witsman (Reg. No. 6327790)
                                Christian S. Morgan (Reg. No. 6327350)
                                Angela J. Simmons (Reg. No. 6289024)
                                NORVELL IP LLC
                                333 S. Wabash Ave., Suite 2700
                                Chicago, Illinois 60604
                                Telephone:   (888) 315-0732
                                Facsimile:    (312) 268-5063
                                courts@norvellip.com

                                *Attorneys for Plaintiffs*
                                *CME Group Inc.*
                                *Chicago Mercantile Exchange Inc.*
                                *New York Mercantile Exchange, Inc.*
                                *Commodity Exchange, Inc.*
                                *Board of Trade of the City of Chicago, Inc.*
                                *Pivot, Inc.*