UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Dmitro Nagovskiy, Konstantin Chechurin, OVH SAS, Webzilla B.V., GoDaddy.com, LLC, and Does 1-3, <br><br> Defendants. | Civil Action No. 1:19-cv-01621 <br><br> Judge Sharon Johnson Coleman <br><br> Magistrate Judge Sheila M. Finnegan |

## ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND OTHER RELIEF

Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., Board of Trade of the City of Chicago, Inc., New York Mercantile Exchange, Inc., Pivot, Inc. and Commodity Exchange, Inc. (collectively, "CME Group") moved *ex parte* for a temporary restraining order and other relief under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Copyright Act, 17 U.S.C. § 101, *et seq.*; the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; Illinois Anti-Phishing Act, 740 Ill. Comp. Stat. 7/1 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; Illinois common law; and the Illinois Anti-Dilution Act, 765 Ill. Comp. Stat. 1036/65 on the grounds that Defendants Dmitro Nagovskiy ("Nagovskiy"), Konstantin Chechurin ("Chechurin"), OVH SAS ("OVH"), GoDaddy.com, LLC ("GoDaddy"), Webzilla B.V. ("Webzilla"), and Does 1-3 (collectively, "Defendants") are using without authorization CME Group's

CME, CME GROUP, ⊕ CME Group, CBOT, NYMEX, COMEX, 🌐, CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP,

CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE trademarks and CME Group's copyrighted works in connection with the unauthorized registration of the infringing domain names <CMErussian.com> and <CMEgroupcenter.com> (collectively, the "Infringing Domain Names") and the operation of the related counterfeit websites at www.CMErussian.com and www.CMEgroupcenter.com (collectively, the "Counterfeit Websites"), which are being used in connection with a phishing scheme designed to solicit or request personally identifiable information, such as user IDs and passwords, from consumers. The Court having read and considered CME Group's complaint, pleadings, moving papers and declarations submitted finds as follows:

1. A temporary restraining order is appropriate where the moving party demonstrates (1) that its case has *some* likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2000). If the court is satisfied that these three conditions have been met, it then must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the court must consider the non-party public interest in denying or granting the injunction. *Id.*

2. In this case, CME Group has established a likelihood of success on its trademark counterfeiting, trademark infringement and unfair competition claims since it has shown that it has protectable trademarks, and there is a likelihood of confusion as to the origin of the Defendants' services. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). Based upon CME Group's longstanding, prior use, CME Group owns protectable interests in the

marks CME, CME GROUP, **CME Group**, CBOT, NYMEX, COMEX, [globe logo], CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE, among a number of other CME-formative marks (collectively, "CME Marks"). CME Group also owns U.S. registrations for the marks CME®, CME GROUP®, **CME Group**®, CBOT®, NYMEX®, COMEX®, [globe logo]®, CME CLEARPORT®, CLEARPORT®, E-MINI®, CME GLOBEX®, GLOBEX®, CME DIRECT®, CME STP®, CME PIVOT®, PIVOT®, CME DATAMINE®, CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF TRADE®, and NEW YORK MERCANTILE EXCHANGE®. In addition, the CME and CME GROUP marks have become distinctive and famous under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). As a result, the CME Marks are distinctive and entitled to a broad scope of protection.

3. CME Group has also demonstrated that Defendants Dmitro Nagovskiy ("Nagovskiy"), Konstantin Chechurin ("Chechurin") and Does 1-3, without authorization or consent, registered and used the CME and CME GROUP trademarks in connection with the Infringing Domain Names. Defendant GoDaddy.com, LLC provided the domain name registration services associated with the Infringing Domain Names.

4. Defendants Nagovskiy, Chechurin and Does 1-3 also used the CME Marks in connection with the operation of the Counterfeit Websites, and this use is likely to cause confusion. Specifically, Defendants Nagovskiy, Chechurin and Does 1-3 use the identical registered marks CME and CME GROUP in connection with identical services as they are operating fake websites designed to collect personal information and account details for prospective and current CME Group

3

customers. Defendants OVH SAS and Webzilla B.V. are complicit in this scheme. Defendant OVH SAS is a French Internet Service Provider ("ISP") that provides website hosting services and/or related services for the www.CMEgroupcenter.com website. Defendant Webzilla B.V. is a Dutch ISP that provides website hosting services and/or related services for the www.CMErussian.com website.

5. CME Group has shown a likelihood of success on its cybersquatting claim because it has established that Defendants Nagovskiy, Chechurin and Does 1-3 have registered, trafficked in, or used in bad faith the Infringing Domain Names, which are identical to or confusingly similar to the distinctive or famous CME and CME GROUP trademarks owned by CME Group. *See Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672, 677 (N.D. Ill. 2006); *Tory Burch LLC v. Does 1-100*, 12-C-7163, 2012 WL 4581409 (N.D. Ill. Oct. 2, 2012).

6. Further, CME Group has shown a likelihood of success on its copyright infringement claim because it established that it owns valid rights in copyrightable subject matter in certain copyrighted materials as shown at the CME Group website at www.cmegroup.com ("Copyrighted Materials"), and reflected in U.S. copyright registrations and pending applications. Defendants Nagovskiy, Chechurin and Does 1-3 copied the Copyrighted Materials without authorization, and their infringing work in the Counterfeit Websites is substantially similar to that of CME Group. *See* 17 U.S.C. § 106; *see also, Tillman v. New Line Cinema Corp.*, No. 08-1667, 2008 WL 4488204 (7th Cir. Oct. 7, 2008).

7. CME Group has also shown a likelihood of success on its Digital Millennium Copyright Act claim because it established that Defendants Nagovskiy, Chechurin and Does 1-3 altered or removed CME Group's copyright notice and contact information, which constitutes its copyright management information. 17 U.S.C. § 1202.

8. CME Group has shown a likelihood of success on its anti-phishing claim because the Defendants Dmitro Nagovskiy, Chechurin, and Does 1-3 set up the Counterfeit Websites and solicit

4

or request personally identifiable information, such as user IDs and passwords, all without authority from CME Group.

9. Finally, CME Group has demonstrated that there is no adequate remedy at law, and that it will be irreparably harmed if its Motion is not granted. *See Int'l Kennel Club of Chicago, Inc.*, 846 F.2d at 1092. Defendants' unauthorized use of the CME Marks has and will continue to irreparably harm CME Group through damage to the CME Group reputation, diminished goodwill, loss of exclusivity and control over use, and possible diversion of sales. CME Group also will suffer losses associated with the use of captured user IDs and passwords from existing customers, which can potentially compromise customer data, disclose confidential information, and adversely impact the integrity of CME Group systems and operations. In addition, the public and individuals will suffer irreparable harm by this illicit, phishing scheme and become victims of identity theft. There is no adequate remedy at law that is appropriate in this case besides a restraining order and injunction.

10. The public is also injured by Defendants' actions because customers looking for CME Group on the Internet will believe they reached CME Group when they arrive at Defendants' Counterfeit Websites and will be confused and misled by Defendants' conduct. In fact, CME Group believes there is actual confusion in the marketplace, which heightens the public injury. Moreover, Defendants can take advantage of the customers' CME Group login information if the customers reveal it when attempting to sign into the Counterfeit Websites. Individuals providing information on the Counterfeit Websites are at risk of having their identities stolen because the Counterfeit Websites seek personally identifiable information such as full name, email, phone number, Skype name, and password.

11. In this case, the potential harm to CME Group and the public outweighs any potential harm to Defendants because any harm to Defendants in this matter is purely monetary, which would be gained at the expense of CME Group through unauthorized use of CME Group's

intellectual property rights.

12. The public interest will also be served by the issuance of a temporary restraining order because "enforcement of the trademark laws prevents consumer confusion." *Eli Lily & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). In this case, enjoining Defendants' use of the CME Marks prevents harm to consumers by eliminating the possibility of confusion as to source and sponsorship and preventing potential abuse of CME Group's customers' login information. Here, the public interest is further served by preventing the theft of individual personal information, which goes beyond the mere interest of CME Group.

13. The Court finds good cause why CME Group's complaint, TRO filings and related documents should be designated as restricted and precluded from public access.

IT IS ORDERED that DEFENDANTS Nagovskiy, Chechurin, Does 1-3, and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

A. Using the CME Marks, including but not limited to the marks CME, CME GROUP, ⊕ CME Group, CBOT, NYMEX, COMEX, 🌐, CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not genuine CME Group goods or services or not authorized by CME Group;

6

B. Using any name, mark, or domain name that wholly incorporates the CME Marks or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the CME Marks;

C. Registering, transferring, selling, owning or exercising control over any domain name that incorporates, in whole or in part, the CME Marks or anything confusingly similar thereto;

D. Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendants are in any way affiliated, connected, or associated with CME Group or its services;

E. Licensing or authorizing others to use the CME Marks or any confusingly similar mark;

F. Injuring CME Group's business reputation and the goodwill associated with the CME Marks, and from otherwise unfairly competing with CME Group in any manner whatsoever;

G. Passing off Defendants' goods or services as those of CME Group;

H. Committing any acts which will blur or dilute, or are likely to blur or dilute the distinctive quality of the famous CME Marks;

I. Reproducing and displaying the Copyrighted Materials;

J. Violating any of the exclusive rights owned by CME Group in the Copyrighted Materials or any other materials in which CME Group owns copyright; and

K. Otherwise infringing upon the copyrights owned by CME Group.

IT IS FURTHER ORDERED that DEFENDANTS deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendants that bear the CME Marks, include the CME Copyrighted Materials,

7

or any other mark that is likely to be confused with the CME Marks.

IT IS FURTHER ORDERED that DEFENDANTS Nagovskiy, Chechurin, Does 1-3, and GoDaddy transfer ownership of the Infringing Domain Names <CMEGroupcenter.com> and <CMErussian.com> and any other domain names under the control of Defendants that incorporate, in whole or in part, the CME Marks or anything confusingly similar thereto.

IT IS FURTHER ORDERED that DEFENDANTS Nagovskiy, Chechurin, and Does 1-3 file with the Court and serve on CME Group within thirty (30) days after issuance of this order, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

IT IS FURTHER ORDERED that those in privity with, working with, or providing services of any kind to DEFENDANTS Nagovskiy, Chechurin, and Does 1-3, and with notice or receipt of the injunction or any such Court order, including any Internet search engines, domain name registrars, domain name registries, Internet Service Providers, and web hosts, shall (a) be and are restrained and enjoined from facilitating access to any and all websites and accounts through which Defendants engage in the counterfeiting use of the CME Marks, including but not limited to the Infringing Domain Names and Counterfeit Websites, (b) be ordered to provide any and all identification, contact and registration information associated with the Infringing Domain Names and Counterfeit Websites; (c) be ordered to produce any and all documents and electronically stored information regarding use, access, download, and visitors to the Counterfeit Websites; and (d) be enjoined and restrained from altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in their actual or constructive care, custody or control that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located.

IT IS FURTHER ORDERED that DEFENDANTS GoDaddy, OVH, Webzilla, and their

officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily enjoined and restrained from:

    A. Altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in their actual or constructive care, custody or control that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located;

    B. Providing Defendants Nagovskiy, Chechurin, and Does 1-3 access to any material or activity residing at the Counterfeit Websites; and

    C. Providing Defendants Nagovskiy, Chechurin, and Does 1-3 access to any account associated with the Infringing Domain Names and Counterfeit Websites.

IT IS FURTHER ORDERED that a subpoena be issued pursuant to 17 U.S.C. §512(h), compelling Defendants GoDaddy, OVH, and Webzilla to expeditiously disclose to CME Group or any person authorized by CME Group, information sufficient to identify Defendants Nagovskiy, Chechurin, and Does 1-3, to the extent such information is available as to each such Defendant.

IT IS FURTHER ORDERED that Defendant GoDaddy, within five (5) business days of the receipt of the Court's order, shall unlock, change the registrar of record, and take any steps necessary to transfer the Infringing Domain Names to a registrar of CME Group's selection until further order by this Court.

IT IS FURTHER ORDERED that all Defendants shall preserve and not destroy any and all records, documents, files, electronically stored information and things relating to the CME Marks, Copyrighted Materials, Infringing Domain Names, and Counterfeit Websites, including but not limited to registration materials, login data, user information, file structure and directory, data packets,

and shall take steps to retrieve files that may have been deleted before entry of this Temporary Restraining Order.

IT IS FURTHER ORDERED that CME Group may seek expedited discovery from all Defendants within the limits of 17 U.S.C. 512(h) as to Defendants GoDaddy, OVH and Webzilla.

IT IS FURTHER ORDERED that CME Group does not need to post any bond.

IT IS FURTHER ORDERED that Defendants appear before this Court within fourteen (14) days of the date of this Order, unless otherwise set by the Court for a hearing on this Order, and to show cause why Defendants, their officers, directors, agents, servants, employees, successors, assigns and attorneys, as well as all those in active concert or participation with them should not be preliminarily enjoined, in accordance with the terms of the of this temporary restraining order, pending the final determination of this action;

IT IS FURTHER ORDERED that this Case and all documents filed therein shall remain sealed pursuant to Local Rule 26.2 until this Court conducts the hearing on the order to show cause for the preliminary injunction, unless otherwise ordered by the Court; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above temporary restraining order shall remain in effect until further order of this Court.

SO ORDERED on this 7th day of March, 2019.

_____
U.S. DISTRICT COURT JUDGE