**CONFIDENTIAL – FILED UNDER SEAL**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc.,

    Plaintiffs,

v.

Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, OVH SAS, Webzilla B.V., EuroByte LLC, GoDaddy.com, LLC, Registrar of Domain Names REG.RU LLC, and Does 1-3,

    Defendants.

Civil Action No. 1:19-cv-01621
*SEALED*

Judge Sharon Johnson Coleman

Magistrate Judge Sheila M. Finnegan

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONVERT
### <u>TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION</u>

Dated: March 29, 2019

Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Angela J. Simmons (Reg. No. 6289024)
Christian S. Morgan (Reg. No. 6327350)
Matthew D. Witsman (Reg. No. 6327790)
NORVELL IP LLC
333 S. Wabash Ave., Suite 2700
Chicago, Illinois 60604
Telephone: (888) 315-0732
Facsimile: (312) 268-5063
courts@norvellip.com


*Attorneys for Plaintiffs*

CONFIDENTIAL – FILED UNDER SEAL

## I. **INTRODUCTION**

Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc. and Pivot, Inc. (collectively, "CME Group") seek to convert the existing Temporary Restraining Order into a preliminary injunction enjoining willful acts of trademark counterfeiting, trademark infringement, unfair competition, cybersquatting, phishing, and copyright infringement violations against Defendants Dmitro Nagovskiy ("Nagovskiy"), Konstantin Chechurin ("Chechurin"), Evgeniy Golub ("Golub"), OVH SAS ("OVH"), Webzilla B.V. ("Webzilla"), EuroByte LLC ("EuroByte"), GoDaddy.com, LLC ("GoDaddy"), Registrar of Domain Names REG.RU LLC ("REG.RU"), and Does 1-3 (collectively, "Defendants"). CME Group further requests a modification of the existing Temporary Restraining Order to address the newly-registered infringing domain names and active counterfeit websites and the newly-added Defendants as detailed in the First Amended Complaint.

On March 7, 2019, the Court found that CME Group was entitled to a *Temporary Restraining Order* based on the evidence showing that (1) CME Group had a likelihood of success on the merits; (2) CME Group had no adequate remedy at law and would suffer irreparable harm if the Temporary Restraining Order was not entered; (3) the balance of harms tipped in CME Group's favor; and (4) the public interest favored issuance of the Temporary Restraining Order. The facts have not changed since March 7, 2019. Instead, CME Group identified additional evidence of infringing conduct that arose after the filing of this action and this evidence only further increases the potential harm suffered by CME Group and the public absent entry of a preliminary injunction.

2

Without authorization or justification, Defendants are using CME Group's registered trademarks and copyrighted material in connection with the infringing domain names <CMEgroupcenter.com>, <CMEgroupcenters.com>, <CMErussia.com>, <CMErussian.com> and <CMErussians.com> ("Infringing Domain Names") and operation and maintenance of the counterfeit and phishing websites www.CMEgroupcenter.com, www.CMEgroupcenters.com, www.CMErussian.com and www.CMErussia.com ("Counterfeit Websites") that harm CME Group's reputation in the marketplace. CME Group's history is built on trust and its relationships with customers, partners, governments, investors and many other constituents in the financial markets. Defendants' acts of counterfeiting and infringement are tantamount to corporate identity theft for the purpose of collecting the personal information and account details of CME Group's customers. Moreover, the Counterfeit Websites are mirror images of the genuine CME Group website (except that most of the content has been translated into Russian). The Counterfeit Websites are designed to confuse potential and existing CME Group customers and to elicit sensitive, personal and financial information from them as part of a fraudulent scheme that seeks monetary investments from these individuals.

Because this conduct is an attack on CME Group's business and its customers, and CME Group and the public will be irreparably harmed, the Court must enter a preliminary injunction enjoining Defendants' conduct.

## II. **STATEMENT OF FACTS**

On March 7, 2019, CME Group moved for a Temporary Restraining Order submitting ample evidence in support of its likelihood of success on the merits of its trademark counterfeiting, trademark infringement, unfair competition, cybersquatting,

phishing, and copyright infringement claims. CME Group also demonstrated that it does not have an adequate remedy at law and it will suffer irreparable harm through damage to the CME Group reputation, diminished goodwill, loss of exclusivity and control over use, and possible diversion of sales if the Temporary Restraining Order was not entered. More importantly, CME Group and its customers could suffer irreparable harm through potentially compromised customer data, disclosure of confidential information and adverse impacts to the integrity of CME Group systems and operations. As a result, the balance of harms tips decidedly in CME Group's favor. CME Group further demonstrated that the public interest would be served by issuance of the Temporary Restraining Order.

Finding good cause for CME Group's *Ex Parte* Motion, Judge Sharon Johnson Coleman entered the requested Temporary Restraining Order and Other Relief ("Temporary Restraining Order") on March 7, 2019 after an *ex parte* hearing. The Temporary Restraining Order is attached hereto as Exhibit A. Specifically, the Court found that CME Group had a high likelihood of success on the merits and demonstrated irreparable harm absent entry of the Temporary Restraining Order. Order, pgs. 2-5. As part of the Temporary Restraining Order, the Court found there was good cause to seal this case. The Temporary Restraining Order and the Sealing Order were originally set to expire on March 20, 2019. *Id.* at pg. 10.

On March 14 and 15, 2019, CME Group became aware of the registration of new nearly identical infringing domain names, <CMEgroupcenters.com>, <CMErussia.com>, and <CMErussians.com>, and CME Group has a reasonable basis to believe that these new infringing domain names were registered by Defendants Chechurin, Nagovskiy, Golub and/or someone working in concert with them or at their direction. *See* Declaration

4

of Luis Moreau ("Moreau Declaration") at ¶¶ 3 - 10, Exhibits A - F. CME Group subsequently discovered the related www.CMEgroupcenters.com and www.CMErussia.com websites, which are nearly identical to the www.CMEgroupcenter and www.CMErussian.com websites, respectively. *See* Moreau Declaration at ¶ 5. CME Group has a reasonable basis to believe these new websites are operated by Defendants Chechurin, Nagovskiy, Golub and/or someone working in concert with them or at their direction. *See generally*, Moreau Declaration at ¶¶ 3 - 10, Exhibits A - F.

Based on WHOIS registration details, CME Group also confirmed that Defendant GoDaddy is the domain registrar for the <CMErussians.com> domain name, Defendant Reg.RU is the domain registrar for the <CMEgroupcenters.com> and <CMErussian.com> domain names, Defendant OVH is the Internet Service Provider ("ISP") for the www.CMEgroupcenters.com website, and Defendant EuroByte is the ISP for the www.CMErussia.com website. *See* Moreau Declaration at ¶¶ 4, 6, 7, 8, and 9, Exhibits A - E.

On March 19, 2019, the Court granted CME Group's first motion for alternative service to allow CME Group to serve Defendants Chechurin, Nagovskiy and OVH via electronic mail. On March 19, 2019, the Court also extended the Temporary Restraining Order until April 4, 2019, to allow CME Group time to serve Defendants Chechurin, Nagovskiy and OVH, and for CME Group to file its Amended Complaint regarding the newly-discovered infringing domain names and websites and newly-added defendants. A hearing on the Temporary Restraining Order is currently set for April 4, 2019 at 9:00am ("TRO Hearing").

On March 20, 2019, Defendant Webzilla provided CME Group with account information related to the www.CMErussian.com website, which indicates that Defendant Golub is an operator of this website. *See* Moreau Declaration at ¶12, Exhibit H.

On March 21, 2019, CME Group filed its First Amended Complaint to include the <CMEgroupcenters.com>, <CMErussia.com> and <CMErussians.com> infringing domain names, the www.CMEgroupcenters.com and www.CMErussia.com counterfeit websites, and Defendants Golub, EuroByte and REG.RU in the present action.

On March 26, 2019, the Court granted CME Group's second motion for alternative service to allow CME Group to serve Defendants Golub, EuroByte and REG.RU via electronic mail.

CME Group has formally served Defendants GoDaddy, Webzilla, Chechurin, Nagovskiy and OVH and provided them with notice of the TRO Hearing. CME Group will formally serve Defendants Golub, EuroByte and REG.RU and provide them with notice of the TRO Hearing on or before March 29, 2019.

Since the Temporary Restraining Order has been entered, CME Group has been successful in seeking the cooperation of domain name registrar, Defendant GoDaddy, and ISP, Defendant Webzilla, in shutting down the www.CMEgroupcenter.com and www.CMErussian.com websites and transferring the <CMEgroupcenter.com> and <CMErussian.com> domain names to an account controlled by CME Group's counsel during the pendency of this action.

CME Group respectfully requests that this Court convert the Temporary Restraining Order into a preliminary injunction against all Defendants so that they remain enjoined from trademark counterfeiting, trademark infringement, unfair competition,

cybersquatting, phishing, and copyright infringement. CME Group also requests that the Court modify the order to address the newly-identified <CMEgroupcenters.com>, <CMErussia.com> and <CMErussians.com> domain names and the www.CMEgroupcenters.com and www.CMErussia.com websites, and newly-added Defendants Golub, EuroByte and REG.RU. Absent entry of this Preliminary Injunction and modification of the existing order, CME Group will suffer irreparable harm. There is no harm to Defendants in entry of this Preliminary Injunction and modification of the existing order.

## III. **ARGUMENT**

### A. The Entry of a Preliminary Injunction Extending Relief Already Granted in the Temporary Restraining Order Is Appropriate.

CME Group respectfully requests that this Court convert the existing Temporary Restraining Order into a preliminary injunction to prevent further unlawful conduct by Defendants. Courts have found that conversion of temporary restraining orders into preliminary injunctions are "necessary and appropriate" in similar cases. *Tory Burch LLC v. Does 1-100,* No. 12 C 7163, 2012 WL 4581409, at *6 (N.D. Ill. Oct. 2, 2012) (court granted conversion from TRO to preliminary injunction against multiple defendants operating counterfeit websites in order to keep infringing domain names in plaintiff's control and keep defendants' accounts frozen during pendency of case); *See also, Deckers Outdoor Corp. v. Does 1-55*, No. 11-CV-10, 2011 WL 2036454, at *1 (N.D. Ill. May 24, 2011) (court granted plaintiff's request to convert TRO to preliminary injunction against defendants operating counterfeit websites).

1.    **This Court Has Already Found That the Requirements for a Preliminary Injunction Are Satisfied.**

In the Seventh Circuit, the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Domanus v. Lewicki*, 857 F. Supp .2d 719, 723 (N.D. Ill. 2012) (citation omitted). A party seeking to obtain a temporary restraining order or a preliminary injunction must demonstrate: (1) that its case has *some* likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (emphasis added); Fed. R. Civ. P. 65(b). If the court is satisfied that these three conditions have been met, it then must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the court must consider the non-party public interest in denying or granting the injunction. *Id.*

This Court has already found that all of the above requirements were satisfied and the Court entered the Temporary Restraining Order. Order, pgs. 2-6. That is, the Court found that CME Group's overwhelming evidence established that it would likely succeed on its claims, CME Group had no adequate remedy at law and will continue to suffer irreparable harm absent a temporary restraining order, that the burden tipped in CME Group's favor, and the public interest favored issuance of the temporary restraining order. *Id.* Because the requirements for a temporary restraining order are satisfied, it follows that the requirements for a preliminary injunction are also satisfied.

**2.    CME Group Requests the Court Modify The Current Order To Include Newly Discovered Evidence and Infringing Acts and Recently Added Defendants.**

As part of this present Motion, CME Group reasonably requests that the Court modify the existing Temporary Restraining Order to address the recently registered <CMEgroupcenters.com>, <CMErussia.com> and <CMErussians.com> domain names, the recently launched www.CMEgroupcenters.com and www.CMErussia.com websites, and the newly-added Defendants Golub, EuroByte and REG.RU. As outlined above and as detailed in the Amended Complaint, CME Group has a reasonable basis to believe that these new domain names and websites were registered by and are being operated by Defendants Nagovskiy and Chercurin and/or someone working in concert with them or at their direction. CME Group has also confirmed that Defendant GoDaddy is the domain registrar for the <CMErussians.com> domain name, Defendant Reg.RU is the domain registrar for the <CMEgroupcenters.com> and <CMErussian.com> domain names, Defendant OVH is the Internet Service Provider ("ISP") for the www.CMEgroupcenters.com website, and Defendant EuroByte is the ISP for the www.CMErussia.com website. *See* Moreau Declaration at ¶¶ 4, 6, 7, 8, and 9, Exhibits A - E. Finally, CME Group has received account information from Defendant Webzilla indicating that Defendant Golub is an operator of the www.CMErussian.com website. *See* Moreau Declaration at ¶12, Exhibit H.

Accordingly, the same arguments and legal analysis set forth in the current order apply to these domain names, websites and defendants. For example, because the new domain names and websites are nearly identical to the domain names and websites detailed in CME Group's original Motion for a Temporary Restraining Order, it follows that CME Group has a likelihood of success on the merits of these claims; CME Group has

9

no adequate remedy at law and will suffer irreparable harm absent entry of a preliminary injunction; the balance of harms tips in CME Group's favor; and the public interest favors issuance of a preliminary injunction.

Further, CME Group is not requesting new types of relief, but is requesting that the order be modified to include the new domain names, websites and Defendants. Therefore, CME Group's request for modification of the current order is reasonable and appropriate. As a result, the Court is justified in entering a new order that specifically covers the <CMEgroupcenters.com>, <CMErussia.com> and <CMErussians.com> domain names, the www.CMEgroupcenters.com and www.CMErussia.com websites, and Defendants Golub, EuroByte and REG.RU.

**3.    The Equitable Relief Granted in This Case Remains Appropriate.**

Courts grant injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark...." 15 U.S.C. § 1116(a). In this case, CME Group sought very specific relief against different Defendants. In doing so, CME Group sought to minimize the harm and burden that could be imposed upon the different entities involved.

Moreover, CME Group has demonstrated more than a sufficient basis warranting issuance of a preliminary injunction. As a result, this Court is justified in enjoining the conduct of Defendants, and the issuance of the preliminary injunction order is authorized by law. *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 791 (N.D. Ill. 2010) (TRO and subsequent preliminary injunction granted in favor of trademark plaintiff).

### a) Defendants' Infringing Acts Must Be Enjoined.

The Temporary Restraining Order entered on March 7, 2019, enjoined the Defendants from certain infringing and unlawful acts. For example, certain Defendants were enjoined from using the CME Marks, registering or controlling any domain names that include the CME Marks, injuring CME Group's reputation, and committing any acts that will dilute the distinctive quality of the famous CME Marks, among other acts. There is no reason why these acts should not continue to be enjoined through entry of a preliminary injunction. Specifically, Defendants will suffer no harm by continued entry of this injunction.

### b) The Infringing Domain Name Transfer Order Remains Appropriate.

CME Group seeks a conversion of the Temporary Restraining Order entered by this Court on March 7, 2019 into a preliminary injunction order requiring that the Infringing Domain Names be transferred to CME Group while this case is pending. As outlined above, two of the Infringing Domain Names (<CMEgroupcenter.com> and <CMErussian.com>) have already been transferred to an account controlled by CME Group's counsel. However, the three newly-discovered domain names (<CMEgroupcenters.com>, <CMErussia.com> and <CMErussians.com>) have not yet been transferred. Further, absent a preliminary injunction, there is nothing to prevent Defendants from registering new domain names that will result in the exact same harm caused. Conversion of the Temporary Restraining Order to a preliminary injunction and the modification of the order to address the three new domain names is the only course of action that ensures the transfer of the three new Infringing Domain Names during the

pendency of this action, and prevents Defendants from registering new infringing domain names or creating new infringing websites. Moreover, absent such an order, there is nothing to prevent Defendants from conducting further illegal activities, changing ownership details for the Infringing Domain Names, switching Internet Service Providers, deleting the relevant data associated with the Counterfeit Websites, all of which will thwart CME Group's ability to seek relief from this Court.

Therefore, this Court's order requiring transfer of the Infringing Domain Names to CME Group for the duration of this case is appropriate and should be extended through the pendency of this case.

### c) An Order of Preservation of Evidence Remains Appropriate.

CME Group requests a conversion of the Temporary Restraining Order into a preliminary injunction so that the relevant evidence in this case remains preserved. Defendants have engaged in willful counterfeiting and have shown a propensity to ignore the law and conceal their identities. Defendants developed a scheme that causes irreparable harm to CME Group. As a result, there is a legitimate concern that they will do anything to cover their tracks, including destruction of evidence, cancellation of domain names, deletion of accounts with ISPs, etc. If this happens, CME Group will be prevented from identifying the infringing actors, uncovering the extent of the harm caused, and retrieving the captured data. Movement or destruction of the documentary evidence would render prosecution of the case much more difficult and would frustrate the ultimate relief CME Group seeks in this action.

To prevent these occurrences, CME Group requests that the order requiring preservation of evidence be extended through the pendency of this case. Since the entry

of the Temporary Restraining Order, Defendant Webzilla provided CME Group with information for the account associated with the counterfeit website at www.CMErussian.com. Accordingly, an order continuing to preserve all relevant evidence should be granted. This order for preservation would apply to all Defendants.

### d) Expedited Discovery Order Remains Appropriate.

CME Group requests a conversion of the Temporary Restraining Order into a preliminary injunction so that the order for expedited discovery remains in effect. CME Group established the irreparable harm it is suffering at the hands of Defendants. However, an injunction alone does get to the root of the problem of uncovering true identities of all individuals or entities involved in the operation of the Counterfeit Websites and assessing the potential damage associated with data captured from users of the Counterfeit Websites. As highlighted by CME Group's filing of the Complaint and Amended Complaint, CME Group is still identifying the actors involved in this infringing conduct. This information can only be sought through further discovery. As a result, an order expediting discovery should be extended. This order for expedited discovery would apply to all Defendants.

## IV. CONCLUSION

For the foregoing reasons, CME Group respectfully requests that the Court convert the existing Temporary Restraining Order into a preliminary injunction because CME Group has established that it will likely succeed on the merits of its claims, CME Group has no adequate remedy at law and will continue to suffer irreparable harm absent entry of the preliminary injunction, the balance of harms tips decidedly in CME Group's favor, and the public interest favors issuance of the preliminary injunction. In addition, it is

13

appropriate and reasonable for the Court to modify its order to include the newly-registered domain names and websites and newly-added defendants.

Respectfully submitted,

Dated: March 29, 2019     By: _____

Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Angela J. Simmons (Reg. No. 6289024)
Christian S. Morgan (Reg. No. 6327350)
Matthew D. Witsman (Reg. No. 6327790)
NORVELL IP LLC
333 S. Wabash Ave., Suite 2700
Chicago, Illinois 60604
Telephone:   (888) 315-0732
Facsimile:    (312) 268-5063
courts@norvellip.com

*Attorneys for Plaintiffs*
*CME Group Inc.*
*Chicago Mercantile Exchange Inc.*
*New York Mercantile Exchange, Inc.*
*Commodity Exchange, Inc.*
*Board of Trade of the City of Chicago, Inc.*
*Pivot, Inc.*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CME Group Inc., Chicago Mercantile Exchange
Inc., New York Mercantile Exchange, Inc.,
Commodity Exchange, Inc., Board of Trade of
the City of Chicago, Inc., and Pivot, Inc.,

        Plaintiffs,

v.

Dmitro Nagovskiy, Konstantin Chechurin, OVH
SAS, Webzilla B.V., GoDaddy.com, LLC, and
Does 1-3,

        Defendants.

Civil Action No. 1:19-cv-01621

Judge Sharon Johnson Coleman

Magistrate Judge Sheila M. Finnegan

**ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND OTHER RELIEF**

       Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., Board of Trade of the City of

Chicago, Inc., New York Mercantile Exchange, Inc., Pivot, Inc. and Commodity Exchange, Inc.

(collectively, "CME Group") moved *ex parte* for a temporary restraining order and other relief under

the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Copyright Act, 17 U.S.C. § 101, *et seq.*; the Illinois

Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; Illinois Anti-Phishing Act,

740 Ill. Comp. Stat. 7/1 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

Ill. Comp. Stat. 505/1 *et seq.*; Illinois common law; and the Illinois Anti-Dilution Act, 765 Ill. Comp.

Stat. 1036/65 on the grounds that Defendants Dmitro Nagovskiy ("Nagovskiy"), Konstantin

Chechurin ("Chechurin"), OVH SAS ("OVH"), GoDaddy.com, LLC ("GoDaddy"), Webzilla B.V.

("Webzilla"), and Does 1-3 (collectively, "Defendants") are using without authorization CME Group's

CME, CME GROUP, CME Group, CBOT, NYMEX, COMEX, , CME

CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP,

CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE trademarks and CME Group's copyrighted works in connection with the unauthorized registration of the infringing domain names <CMErussian.com> and <CMEgroupcenter.com> (collectively, the "Infringing Domain Names") and the operation of the related counterfeit websites at www.CMErussian.com and www.CMEgroupcenter.com (collectively, the "Counterfeit Websites"), which are being used in connection with a phishing scheme designed to solicit or request personally identifiable information, such as user IDs and passwords, from consumers. The Court having read and considered CME Group's complaint, pleadings, moving papers and declarations submitted finds as follows:

1. A temporary restraining order is appropriate where the moving party demonstrates (1) that its case has *some* likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2000). If the court is satisfied that these three conditions have been met, it then must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the court must consider the non-party public interest in denying or granting the injunction. *Id.*

2. In this case, CME Group has established a likelihood of success on its trademark counterfeiting, trademark infringement and unfair competition claims since it has shown that it has protectable trademarks, and there is a likelihood of confusion as to the origin of the Defendants' services. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). Based upon CME Group's longstanding, prior use, CME Group owns protectable interests in the

marks CME, CME GROUP, ⊕**CME Group**, CBOT, NYMEX, COMEX, ⬛, CME

CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP,

CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE,

CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE, among a

number of other CME-formative marks (collectively, "CME Marks"). CME Group also owns U.S.

registrations for the marks CME®, CME GROUP®, ⊕**CME Group** ®, CBOT®, NYMEX®,

COMEX®, ⬛ ®, CME CLEARPORT®, CLEARPORT®, E-MINI®, CME GLOBEX®,

GLOBEX®, CME DIRECT®, CME STP®, CME PIVOT®, PIVOT®, CME DATAMINE®,

CHICAGO MERCANTILE EXCHANGE®, CHICAGO BOARD OF TRADE®, and NEW

YORK MERCANTILE EXCHANGE®. In addition, the CME and CME GROUP marks have

become distinctive and famous under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). As a

result, the CME Marks are distinctive and entitled to a broad scope of protection.

 3. CME Group has also demonstrated that Defendants Dmitro Nagovskiy

("Nagovskiy"), Konstantin Chechurin ("Chechurin") and Does 1-3, without authorization or consent,

registered and used the CME and CME GROUP trademarks in connection with the Infringing

Domain Names. Defendant GoDaddy.com, LLC provided the domain name registration services

associated with the Infringing Domain Names.

 4. Defendants Nagovskiy, Chechurin and Does 1-3 also used the CME Marks in

connection with the operation of the Counterfeit Websites, and this use is likely to cause confusion.

Specifically, Defendants Nagovskiy, Chechurin and Does 1-3 use the identical registered marks CME

and CME GROUP in connection with identical services as they are operating fake websites designed

to collect personal information and account details for prospective and current CME Group

customers. Defendants OVH SAS and Webzilla B.V. are complicit in this scheme. Defendant OVH SAS is a French Internet Service Provider ("ISP") that provides website hosting services and/or related services for the www.CMEgroupcenter.com website. Defendant Webzilla B.V. is a Dutch ISP that provides website hosting services and/or related services for the www.CMErussian.com website.

5. CME Group has shown a likelihood of success on its cybersquatting claim because it has established that Defendants Nagovskiy, Chechurin and Does 1-3 have registered, trafficked in, or used in bad faith the Infringing Domain Names, which are identical to or confusingly similar to the distinctive or famous CME and CME GROUP trademarks owned by CME Group. *See Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672, 677 (N.D. Ill. 2006); *Tory Burch LLC v. Does 1-100*, 12-C-7163, 2012 WL 4581409 (N.D. Ill. Oct. 2, 2012).

6. Further, CME Group has shown a likelihood of success on its copyright infringement claim because it established that it owns valid rights in copyrightable subject matter in certain copyrighted materials as shown at the CME Group website at www.cmegroup.com ("Copyrighted Materials"), and reflected in U.S. copyright registrations and pending applications. Defendants Nagovskiy, Chechurin and Does 1-3 copied the Copyrighted Materials without authorization, and their infringing work in the Counterfeit Websites is substantially similar to that of CME Group. *See* 17 U.S.C. § 106; *see also, Tillman v. New Line Cinema Corp.*, No. 08-1667, 2008 WL 4488204 (7th Cir. Oct. 7, 2008).

7. CME Group has also shown a likelihood of success on its Digital Millennium Copyright Act claim because it established that Defendants Nagovskiy, Chechurin and Does 1-3 altered or removed CME Group's copyright notice and contact information, which constitutes its copyright management information. 17 U.S.C. § 1202.

8. CME Group has shown a likelihood of success on its anti-phishing claim because the Defendants Dmitro Nagovskiy, Chechurin, and Does 1-3 set up the Counterfeit Websites and solicit

4

or request personally identifiable information, such as user IDs and passwords, all without authority from CME Group.

9. Finally, CME Group has demonstrated that there is no adequate remedy at law, and that it will be irreparably harmed if its Motion is not granted. *See Int'l Kennel Club of Chicago, Inc.*, 846 F.2d at 1092. Defendants' unauthorized use of the CME Marks has and will continue to irreparably harm CME Group through damage to the CME Group reputation, diminished goodwill, loss of exclusivity and control over use, and possible diversion of sales. CME Group also will suffer losses associated with the use of captured user IDs and passwords from existing customers, which can potentially compromise customer data, disclose confidential information, and adversely impact the integrity of CME Group systems and operations. In addition, the public and individuals will suffer irreparable harm by this illicit, phishing scheme and become victims of identity theft. There is no adequate remedy at law that is appropriate in this case besides a restraining order and injunction.

10. The public is also injured by Defendants' actions because customers looking for CME Group on the Internet will believe they reached CME Group when they arrive at Defendants' Counterfeit Websites and will be confused and misled by Defendants' conduct. In fact, CME Group believes there is actual confusion in the marketplace, which heightens the public injury. Moreover, Defendants can take advantage of the customers' CME Group login information if the customers reveal it when attempting to sign into the Counterfeit Websites. Individuals providing information on the Counterfeit Websites are at risk of having their identities stolen because the Counterfeit Websites seek personally identifiable information such as full name, email, phone number, Skype name, and password.

11. In this case, the potential harm to CME Group and the public outweighs any potential harm to Defendants because any harm to Defendants in this matter is purely monetary, which would be gained at the expense of CME Group through unauthorized use of CME Group's

5

intellectual property rights.

12. The public interest will also be served by the issuance of a temporary restraining order because "enforcement of the trademark laws prevents consumer confusion." *Eli Lily & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). In this case, enjoining Defendants' use of the CME Marks prevents harm to consumers by eliminating the possibility of confusion as to source and sponsorship and preventing potential abuse of CME Group's customers' login information. Here, the public interest is further served by preventing the theft of individual personal information, which goes beyond the mere interest of CME Group.

13. The Court finds good cause why CME Group's complaint, TRO filings and related documents should be designated as restricted and precluded from public access.

IT IS ORDERED that DEFENDANTS Nagovskiy, Chechurin, Does 1-3, and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

A. Using the CME Marks, including but not limited to the marks CME, CME GROUP, ⊕CME Group, CBOT, NYMEX, COMEX, 🌐, CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not genuine CME Group goods or services or not authorized by CME Group;

6

B. Using any name, mark, or domain name that wholly incorporates the CME Marks or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the CME Marks;

C. Registering, transferring, selling, owning or exercising control over any domain name that incorporates, in whole or in part, the CME Marks or anything confusingly similar thereto;

D. Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendants are in any way affiliated, connected, or associated with CME Group or its services;

E. Licensing or authorizing others to use the CME Marks or any confusingly similar mark;

F. Injuring CME Group's business reputation and the goodwill associated with the CME Marks, and from otherwise unfairly competing with CME Group in any manner whatsoever;

G. Passing off Defendants' goods or services as those of CME Group;

H. Committing any acts which will blur or dilute, or are likely to blur or dilute the distinctive quality of the famous CME Marks;

I. Reproducing and displaying the Copyrighted Materials;

J. Violating any of the exclusive rights owned by CME Group in the Copyrighted Materials or any other materials in which CME Group owns copyright; and

K. Otherwise infringing upon the copyrights owned by CME Group.

IT IS FURTHER ORDERED that DEFENDANTS deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendants that bear the CME Marks, include the CME Copyrighted Materials,

or any other mark that is likely to be confused with the CME Marks.

IT IS FURTHER ORDERED that DEFENDANTS Nagovskiy, Chechurin, Does 1-3, and GoDaddy transfer ownership of the Infringing Domain Names <CMEGroupcenter.com> and <CMErussian.com> and any other domain names under the control of Defendants that incorporate, in whole or in part, the CME Marks or anything confusingly similar thereto.

IT IS FURTHER ORDERED that DEFENDANTS Nagovskiy, Chechurin, and Does 1-3 file with the Court and serve on CME Group within thirty (30) days after issuance of this order, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

IT IS FURTHER ORDERED that those in privity with, working with, or providing services of any kind to DEFENDANTS Nagovskiy, Chechurin, and Does 1-3, and with notice or receipt of the injunction or any such Court order, including any Internet search engines, domain name registrars, domain name registries, Internet Service Providers, and web hosts, shall (a) be and are restrained and enjoined from facilitating access to any and all websites and accounts through which Defendants engage in the counterfeiting use of the CME Marks, including but not limited to the Infringing Domain Names and Counterfeit Websites, (b) be ordered to provide any and all identification, contact and registration information associated with the Infringing Domain Names and Counterfeit Websites; (c) be ordered to produce any and all documents and electronically stored information regarding use, access, download, and visitors to the Counterfeit Websites; and (d) be enjoined and restrained from altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in their actual or constructive care, custody or control that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located.

IT IS FURTHER ORDERED that DEFENDANTS GoDaddy, OVH, Webzilla, and their

officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily enjoined and restrained from:

    A.  Altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in their actual or constructive care, custody or control that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located;

    B.  Providing Defendants Nagovskiy, Chechurin, and Does 1-3 access to any material or activity residing at the Counterfeit Websites; and

    C.  Providing Defendants Nagovskiy, Chechurin, and Does 1-3 access to any account associated with the Infringing Domain Names and Counterfeit Websites.

IT IS FURTHER ORDERED that a subpoena be issued pursuant to 17 U.S.C. §512(h), compelling Defendants GoDaddy, OVH, and Webzilla to expeditiously disclose to CME Group or any person authorized by CME Group, information sufficient to identify Defendants Nagovskiy, Chechurin, and Does 1-3, to the extent such information is available as to each such Defendant.

IT IS FURTHER ORDERED that Defendant GoDaddy, within five (5) business days of the receipt of the Court's order, shall unlock, change the registrar of record, and take any steps necessary to transfer the Infringing Domain Names to a registrar of CME Group's selection until further order by this Court.

IT IS FURTHER ORDERED that all Defendants shall preserve and not destroy any and all records, documents, files, electronically stored information and things relating to the CME Marks, Copyrighted Materials, Infringing Domain Names, and Counterfeit Websites, including but not limited to registration materials, login data, user information, file structure and directory, data packets,

and shall take steps to retrieve files that may have been deleted before entry of this Temporary Restraining Order.

IT IS FURTHER ORDERED that CME Group may seek expedited discovery from all Defendants within the limits of 17 U.S.C. 512(h) as to Defendants GoDaddy, OVH and Webzilla.

IT IS FURTHER ORDERED that CME Group does not need to post any bond.

IT IS FURTHER ORDERED that Defendants appear before this Court within fourteen (14) days of the date of this Order, unless otherwise set by the Court for a hearing on this Order, and to show cause why Defendants, their officers, directors, agents, servants, employees, successors, assigns and attorneys, as well as all those in active concert or participation with them should not be preliminarily enjoined, in accordance with the terms of the of this temporary restraining order, pending the final determination of this action;

IT IS FURTHER ORDERED that this Case and all documents filed therein shall remain sealed pursuant to Local Rule 26.2 until this Court conducts the hearing on the order to show cause for the preliminary injunction, unless otherwise ordered by the Court; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above temporary restraining order shall remain in effect until further order of this Court.

SO ORDERED on this 7th day of March, 2019.

_____
U.S. DISTRICT COURT JUDGE