**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc., | Civil Action No. 1:19-cv-01621 |
| Plaintiffs, | Judge Sharon Johnson Coleman |
| v. | Magistrate Judge Sheila M. Finnegan |
| Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, Ludmila Alexandrova, Viktor Kochin, Legato LLC, Wix.com Ltd., Regtime, Ltd., Masterhost LLC, OVH SAS, EuroByte LLC, Registrar of Domain Names REG.RU LLC, and Does 1-3, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Dated: September 23, 2019

Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Angela J. Simmons (Reg. No. 6289024)
Christian S. Morgan (Reg. No. 6327350)
Matthew D. Witsman (Reg. No. 6327790)
NORVELL IP LLC
333 S. Wabash Ave., Suite 2700
Chicago, Illinois 60604
Telephone:    (888) 315-0732
Facsimile:    (312) 268-5063
courts@norvellip.com

*Attorneys for Plaintiffs*

i

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

III. ARGUMENT ................................................................................................... 5

    A.  Jurisdiction and Venue Are Proper in This Court ............................................. 5

    B.  The Requirements for Default Judgment Are Satisfied .................................... 6

    C.  CME Group Is Entitled to Injunctive, Equitable, and Monetary Relief ............. 7

          1.  Permanent Injunctive Relief Is Appropriate ......................................... 8

                  *a.  Permanent Transfer of the Infringing Domain Names Is Necessary* ............................................................................ 9

                  *b.  The Court Is Authorized to Order the Permanent Transfer of the Infringing Domain Names* ............................... 10

                  *c.  The Court Is Authorized to Coerce Compliance with Its Lawful Orders and Issue Supplemental Orders* ................. 12

          2.  CME Group Is Entitled to a Monetary Judgment ............................... 13

                  *a.  It Is Appropriate and Necessary to Award the Maximum Amount of Statutory Damages on Each of CME Group's Claims* .................................................. 14

                  *b.  Award of Statutory Damages for Trademark Counterfeiting Claim* ............................................................. 24

                  *c.  Award of Statutory Damages for Cybersquatting Claim* ........... 25

                  *d.  Award of Statutory Damages for Copyright Infringement Claim* .............................................................. 26

                  *e.  Award of Statutory Damages for DMCA Claim* ....................... 26

                  *f.  Award of Statutory Damages for Phishing Claim* .................... 27

IV. CONCLUSION ............................................................................................... 28

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994) .................................................................. 6

*Burberry Ltd., et al. v. The Partnerships, et al.*,
No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) ......................................................... 16, 17

*Checker Car Club of America, Inc. v. Fay*,
262 F. Supp. 3d 621 (N.D. Ill. 2017) ......................................................................... 9

*Chi-Boy Music v. Charlie Club*, 930 F.2d 1224 (7th Cir. 1991) ..................................... 15

*Chloe v. Zarafshan*, No. 1:06–cv–3140,
2009 WL 2956827 (S.D.N.Y. Sept. 15, 2009) ........................................................ 17

*Coach, Inc. v. 3D Designers Inspirations*,
70 F. Supp. 3d 942 (C.D. Ill. 2014) .............................................................. 14, 17, 25

*Coach, Inc. v. Does 1–573*, No. 12-cv-1514,
slip op. (N.D. Ill. Oct. 15, 2012) ............................................................................. 10

*Coach, Inc. v. Tom's Treasure Chest*, No. 2:10–cv–243,
2011 WL 4399355 (N.D. Ind. Sept. 21, 2011) ........................................................... 6

*Deckers Outdoor Corp. v. Does 1-100*,
No. 12-cv-377, slip op. (N.D. Ill. Apr. 11, 2012) ................................................ 10, 16

*Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*,
722 F.2d 1319 (7th Cir. 1983) ................................................................................ 14

*e360 Insight v. The Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007) ............................ 8

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
315 F. Supp. 2d 511 (S.D.N.Y. 2004) ...................................................................... 22

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................................................. 21, 24

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988) ........................................................................ 8

*Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708 (N.D. Ill. 2014) ............................ 6

*Lorillard Tobacco Co. v. S&M Central Service Corp.*,
No. 03 C 4986, 2004 WL 2534378 (N.D. Ill. Nov. 8, 2004) ........................... 15

*Malletier v. Carducci Leather Fashions, Inc.*,
648 F. Supp. 2d 501 (S.D.N.Y. 2009).............................................................. 17

*MetroPCS v. Devor*, 215 F. Supp. 3d 626 (N.D. Ill. 2016) .............................. 8

*MetroPCS v. Raymond*, No. 1:15–CV–1062,
2016 WL 1553728 (W.D. Tex. Apr. 4, 2016) .................................................. 8

*NBA Properties, Inc. v. Yan Zhou*, No. 16-cv-11117,
2017 WL 4074020 (N.D. Ill. Sept. 14, 2017) ................................................ 15

*Oakley, Inc. v. The Partnerships, et al.*,
No. 1:13-cv-02958 (N.D. Ill. Jun. 17, 2013) ................................................. 17

*Petmed Express, Inc. v. MedPets.com, Inc.*,
336 F Supp. 2d 1213 (S.D. Fla. 2004)........................................................... 15

*Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. CV 08–0068,
2010 WL 2133937 (E.D.N.Y. Mar. 11, 2010)............................................ 23, 24

*Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359,
2002 WL 596354 (S.D.N.Y. Apr. 17, 2002) .................................................. 16

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) ............. 16

*Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y.2003) .................... 15, 16

*True Religion Apparel, Inc. v. Xiaokang Lee*,
No. 1:11-cv-8242-HB, slip op. (S.D.N.Y. Mar. 12, 2012) ............... 10, 11, 13, 16

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 881 (7th Cir. 2001) ........................... 9

*U.S. v. DiMucci*, 879 F.2d 1488 (7th Cir. 1989)........................................... 14

*Wehrs v. Wells*, 688 F.3d 886 (7th Cir. 2012) .......................................... 6, 7

**Statutes:**

15 U.S.C. § 1114(1) ................................................................................................... 5

15 U.S.C. § 1116(a) ........................................................................................... 10, 13

15 U.S.C. § 1116(d)(1)(B) ........................................................................................ 25

15 U.S.C. § 1117(a) ................................................................................................. 14

15 U.S.C. § 1117(b) ................................................................................................. 14

15 U.S.C. § 1117(c)............................................................................................ 14, 15, 25

15 U.S.C. § 1117(c)(2) ............................................................................................. 25

15 U.S.C. § 1117(d) ................................................................................................. 26

15 U.S.C. § 1125(a) ................................................................................................... 5

15 U.S.C. § 1125(c) ................................................................................................... 5

15 U.S.C. § 1125(d) ................................................................................................... 5

17 U.S.C. § 101 ......................................................................................................... 5

17 U.S.C. § 504(c).................................................................................................... 26

17 U.S.C. § 505 ....................................................................................................... 14

17 U.S.C. § 1202(c).................................................................................................. 27

17 U.S.C. § 1203(b)(5) ............................................................................................ 14

17 U.S.C. § 1203(c)(3)(B) ....................................................................................... 27

28 U.S.C. § 1338(b) ................................................................................................... 5

28 U.S.C. § 1367........................................................................................................ 5

28 U.S.C. § 1391........................................................................................................ 5

735 Ill. Comp. Stat. § 5/2-209................................................................................... 5

740 Ill. Comp. Stat. § 7/15 (a) ................................................................................. 27

740 Ill. Comp. Stat. § 7/15 (c) ........................................................................ 27

815 Ill. Comp. Stat. § 510/3 .......................................................................... 14

**Rules:**

Fed. R. Civ. P. 55(b)(2) ......................................................................... 1, 6, 7

Fed. R. Civ. P. 65(d)(2)(A) .......................................................................... 10

**Other Materials:**

Restatement Third, Unfair Competition (1995) .................................................. 9

## I. **INTRODUCTION**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc. (collectively, "CME Group") submit the following Memorandum of Law in Support of their Motion for Default Judgment against Defendants Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, Ludmila Alexandrova, Viktor Kochin, Legato LLC, Regtime, Ltd., Masterhost LLC, OVH SAS, EuroByte LLC, and Registrar of Domain Names REG.RU LLC (collectively, "Defendants"). All of these Defendants failed to answer CME Group's complaint, amended complaints, or otherwise defend this action, and on September 3, 2019, the Court entered default as to these Defendants. (Dkt. # 87). Prior defendants GoDaddy.com, LLC and Webzilla B.V. were voluntarily dismissed without prejudice on April 18 and May 1, 2019, respectively. Defendant Wix.com Ltd.'s answer is currently due on September 24, 2019 and the parties are currently in settlement discussions.[1]

Defendants' liability for CME Group's claims for willful trademark counterfeiting, trademark infringement, dilution, unfair competition, cybersquatting, willful copyright infringement, violations of the Digital Millennium Copyright Act Copyright Management Information provisions, anti-phishing, and violations of Illinois state and common law is clear and undisputed. Accordingly, this Court should enter a final judgment against Defendants permanently enjoining Defendants' unlawful conduct, permanently transferring the relevant domain names, and entering a monetary judgment based upon

---

[1] On September 23, 2019, Wix.com, Ltd. a consented motion to extend the answer deadline by 14 days until October 8, 2019.

Defendants' willful and unlawful conduct.

## II. <u>BACKGROUND</u>

CME Group is a worldwide leader in the financial services industry with a long and distinguished history. *See* Third Amended Complaint (Dkt. # 75), Paras. 44-59; Declaration of Matthew Kelly (Dkt. # 13), Paras. 4-8. Indeed, through its strong leadership and innovation, CME Group has earned its place as a trustworthy provider of cutting-edge financial products and services and a key part of the world financial markets. *Id.* Since long prior to Defendants' infringing and unlawful conduct, CME Group has continuously used the names CME, CME GROUP, and other trademarks in connection with financial-related services. (Dkt. # 75, ¶¶ 49, 69). CME Group owns a number of U.S. trademark registrations, applications, and extensive common law rights for these brands, including strong registrations and applications for the marks CME, CME GROUP,

 , CBOT, NYMEX, COMEX, , CME CLEARPORT, CLEARPORT, E-MINI, CME GLOBEX, GLOBEX, CME DIRECT, CME STP, CME PIVOT, PIVOT, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, and NEW YORK MERCANTILE EXCHANGE, and others (collectively, the "CME Marks"). (Dkt. # 75, ¶¶ 60-71); (Dkt. # 13, ¶¶ 12-18). CME Group also maintains an active Internet presence at the website www.CMEGroup.com ("CME Group Website"), which serves as a primary marketing tool for CME Group and as a primary point of communication between CME Group and its customers. (Dkt. # 75, ¶¶ 53-59); (Dkt. # 13, ¶¶ 9-10). The CME Group Website is wholly original, and CME Group owns U.S. copyright registrations for the copyrightable subject matter associated with its website. *Id.*; (Dkt. # 13, ¶ 20).

Without authorization or justification, Defendants are and/or were using CME Group's registered trademarks and copyrighted material in connection with the use and registration of the infringing domain names <CMErussia.com>, <CMErussian.com>, <CMErussians.com>, <CMEgroupcenter.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> ("Infringing Domain Names"), and the operation and maintenance of the counterfeit and phishing websites www.CMErussia.com, www.CMErussian.com, www.CMEgroupcenter.com, www.CMEgroupcenters.com, www.CMEtre.com, www.CMEgroupru.com, www.CMErepresentation.com, and www.CME-official.com ("Counterfeit Websites") that harm CME Group's reputation in the marketplace. (Dkt. # 75, ¶¶ 72-116). CME Group's history is built on trust and its relationships with customers, partners, governments, investors and many other constituents in the financial markets. (Dkt. # 13, ¶ 23). Defendants' acts of counterfeiting and infringement are tantamount to corporate identity theft for the purpose of collecting the personal information and account details of CME Group's customers. Moreover, the Counterfeit Websites are or were mirror images of the genuine CME Group website (except that most of the content has been translated into Russian), and the sites removed and/or altered CME Group's contact information. (Dkt. # 75, ¶¶ 73-86); (Dkt. # 13, ¶¶ 27-29). The Counterfeit Websites are designed to confuse potential and existing CME Group customers and to elicit sensitive, personal and financial information from them as part of a fraudulent scheme that seeks monetary investments from these individuals. (Dkt. # 75, ¶¶ 73-86).

On March 7, 2019, the Court entered a Temporary Restraining Order against some of the Defendants. (Dkt. # 22). Pursuant to the Court's orders granting alternative service

of the pleadings on Defendants via email (Dkt. Nos. 27 and 35), CME Group properly served Defendants Nagovskiy, Chechurin, and OVH on March 25, 2019, and served Defendants Golub, EuroByte, and REG.RU on March 29, 2019. (Dkt. Nos. 37, 39, 40, 49, 50, and 51). At that time, Defendants Nagovskiy, Chechurin, OVH, Golub, EuroByte, and REG.RU (collectively, the "Original Defendants") were served with the Complaint, First Amended Complaint, the TRO, and the other filings and orders in this case up to that point. *Id.* On April 8, 2019, after reviewing CME Group's ample evidence and conducting an oral hearing with notice to the Original Defendants, the Court granted CME Group's Motion to Convert the TRO into a Preliminary Injunction. (Dkt. # 57). In doing so, the Court found that (1) CME Group has a high likelihood of success on the merits of its claims; (2) no adequate remedy at law exists and CME Group (and the public at large) would suffer irreparable harm if the Preliminary Injunction were not granted; (3) the balance of harms tips in CME Group's favor; and (4) the public interest favors issuance of the Preliminary Injunction. (Dkt. # 57, ¶¶ 6-12). The subsequent filings in this case, including the amended complaints and Preliminary Injunction Order, were also properly served on the Original Defendants via email. Specifically, the Second Amended Complaint and the Court's April 4th and 8th orders (Dkt. Nos. 54, 57, and 58) were served on the Original Defendants on April 12, 2019. The Court set a final deadline for Defendants to respond to the Second Amended Complaint by April 18, 2019. (Dkt. # 54).

On July 26, 2019, CME Group filed their Motion for Leave to File a Third Amended Complaint to add newly identified Defendants Legato LLC, Ludmila Alexandrova, Masterhost LLC, Regtime, Ltd., and Viktor Kochin (collectively, the "Additional Defendants"), and to address additional counterfeit websites. On July 30, 2019, CME

Group filed their Motion for Alternative Service to serve the New Defendants via email. (Dkt. Nos. 71, 73). The Court granted CME Group's motions (Dkt. # 76), and CME Group properly served the Third Amended Complaint on the Original Defendants and Defendants Legato, Alexandrova, Masterhost, and Regtime on August 5, 2019, and served Defendant Kochin on August 12, 2019. (Dkt. Nos. 77-80, 82). The Additional Defendants were served with the Third Amended Complaint, Preliminary Injunction Order, and other filings and orders in this case. *Id.* The deadline to answer for the Original Defendants was August 19, 2019, for Defendants Legato, Alexandrova, Masterhost, and Regtime was August 26, 2019, and for Defendant Kochin was September 3, 2019.

Despite having actual notice of this case and being properly served with the operative Complaint, amended complaints, orders, and other filings, Defendants have failed to answer, plead, defend, or otherwise appear in this case. As a result, the Court entered a default against Defendants on September 3, 2019. (Dkt. # 87).

## III. ARGUMENT

### A. Jurisdiction and Venue Are Proper in This Court.

This Court has subject matter jurisdiction over CME Group's federal claims pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), (c) and (d), and the Copyright Act, 17 U.S.C. § 101 *et seq.* The Court has supplemental jurisdiction over CME Group's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and the Court may properly exercise personal jurisdiction over Defendants pursuant to the Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2-209 *et seq.*, because Defendants targeted their activities toward consumers in Illinois and caused harm to CME Group's business within this District. Such an assertion of

personal jurisdiction is also in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution.

**B. The Requirements for Default Judgment Are Satisfied.**

Defendants failed to answer CME Group's Complaint or amended complaints, appear, or otherwise defend this action. As a result, the Court made an entry of default against Defendants on September 3, 2019. (Dkt. # 87). Now, CME Group moves for default judgment pursuant to Fed. R. Civ. P. 55(b)(2).

A court may enter a default judgment when the non-moving party has "failed to plead or otherwise defend" itself in the action, and the decision to grant or deny default judgment lies within the court's discretion. *Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 710 (N.D. Ill. 2014). When a court determines that a defendant is in default, all well-pled allegations in the complaint will be taken as true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action in the complaint." *Coach, Inc. v. Tom's Treasure Chest*, No. 2:10–cv–243, 2011 WL 4399355, at *2 (N.D. Ind. Sept. 21, 2011) (finding assertions of complaint "taken as true" in determining willful infringement in connection with selling knockoff handbags containing Coach marks); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Here, CME Group served Defendants with the Complaint, amended complaints, the Court's Orders and minute entries, and the other pleadings/filings in this case via email in accordance with the Court's Orders granting alternative service. *See* Returns of Service, Dkt. Nos. 37, 39, 40, 49-51, 77-80, 82. Despite having actual notice of these proceedings for nearly two months (and in some cases, nearly six months), Defendants

have failed to appear, answer, plead, or otherwise defend this action. Instead, Defendants have ignored the Court's orders and CME Group's attempts to resolve this matter without the need for court intervention, and are now in default.[2] Therefore, an entry of default judgment against Defendants is not only appropriate, but also necessary to stop the harm caused by Defendants' conduct.

Moreover, CME Group properly pled its claims of willful trademark counterfeiting, trademark infringement, dilution, unfair competition, cybersquatting, willful copyright infringement, violations of the Digital Millennium Copyright Act Copyright Management Information provisions, deceptive trade practices, phishing activities, and consumer fraud. (Dkt. # 75). Indeed, based on the pleadings and supporting exhibits, the Court previously held that CME Group has a high likelihood of success on its claims. (Dkt. # 57, ¶¶ 6-12). As a result, CME Group's claims are well pled, and Defendants are liable to CME Group for each cause of action alleged in the Third Amended Complaint. *Wehrs*, 688 F.3d at 892. Accordingly, CME Group requests that the Court enter a final judgment against Defendants and an order granting the equitable and monetary relief described below.

### C. CME Group Is Entitled to Injunctive, Equitable, and Monetary Relief.

Upon entry of judgment, CME Group requests that the Court grant relief for the violations committed by Defendants. Fed. R. Civ. P. 55(b)(2). Specifically, CME Group requests a permanent injunction enjoining certain conduct by Defendants, an order for permanent transfer of the Infringing Domain Names to CME Group, and a monetary award as detailed below and in the Proposed Order.

---

[2] CME was contacted by Defendant OVH, but Defendant OVH indicated that it would not answer the complaint or otherwise participate in the litigation and questioned the Court's jurisdiction.

### 1. Permanent Injunctive Relief Is Appropriate.

Permanent injunctive relief is not only appropriate but also necessary to protect CME Group against future infringement and the public at large from the harm caused by Defendants' conduct. A party seeking to obtain a permanent injunction order must show that: (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. *See MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016) (quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007)); *see also MetroPCS v. Raymond*, No. 1:15–CV–1062, 2016 WL 1553728 (W.D. Tex. Apr. 4, 2016) (granting default judgment and awarding damages in excess of $1.2 million and a permanent injunction against handset trafficking defendant). Notably, these are the same requirements to obtain a preliminary injunction (in addition to likelihood of success on the merits, which has already been established as a matter of law by Defendants' default). This Court has already found that all of these requirements have been satisfied when it entered the Preliminary Injunction Order. (Dkt. # 57). That is, the Court found that CME Group's overwhelming evidence established that it has suffered irreparable injury for which no adequate remedy at law is available, that the balance tipped in CME Group's favor, and the public interest favored issuance of the preliminary injunction order. *Id.*

Moreover, Defendants' egregious and infringing conduct harmed both CME Group and the public at large. CME Group had no control over Defendants' use of the CME Marks, and therefore was harmed. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star,*

*Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (stating "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of defendants' goods"). In addition, damages occasioned by trademark infringement are presumed to be irreparable because it is virtually impossible to ascertain the precise economic consequences of intangible harms caused by such violations, such as damage to reputation and loss of goodwill. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 881, 890 (7th Cir. 2001) (citations omitted). The Northern District of Illinois recently confirmed that harm to a trademark owner's goodwill is considered "presumptively irreparable" in trademark infringement actions in *Checker Car Club of America, Inc. v. Fay*, 262 F. Supp. 3d 621 (N.D. Ill. 2017). Absent a permanent injunction, there is nothing to prevent Defendants from engaging in infringing conduct in the future. *See* Restatement Third, Unfair Competition, Section 35, comment b (1995) ("In cases of deceptive marketing, trademark infringement, or trademark dilution, a prevailing plaintiff is ordinarily awarded injunctive relief to protect both the plaintiff and the public from the likelihood of future harm."). The Court previously found this case warranted issuance of a preliminary injunction and the circumstances have not changed. Therefore, it is logical to extend the existing Preliminary Injunction into a Permanent Injunction.

Accordingly, a Permanent Injunction is warranted in order to protect CME Group and the public from the likelihood of future harm. For these reasons, CME Group requests that the Court convert the existing Preliminary Injunction into a Permanent Injunction as set forth in the Proposed Order.

    a. Permanent Transfer of the Infringing Domain Names Is Required.

The Preliminary Injunction Order contains an express provision requiring that the

Infringing Domain Names be transferred to CME Group, and this provision should be made permanent. The Infringing Domain Names <CMEgroupcenter.com> and <CMErussian.com> have already been transferred to CME Group pursuant to the Preliminary Injunction, but the remaining Infringing Domain Names <CMErussians.com>, <CMErussia.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgrouppru.com>, <CMErepresentation.com>, and <CME-official.com> have not. Therefore, an order requiring permanent transfer of the remaining Infringing Domain Names to CME Group is required, and is set forth in the Proposed Order.

b. The Court Is Authorized to Order the Permanent Transfer of the Infringing Domain Names.

Pursuant to Rule 65(d)(2)(A), this Court has the authority to obligate third-parties to comply with a permanent injunction order when they are "in active concert or participation with" the defendants. In cases of counterfeiting and cybersquatting, such other persons or entities acting in concert with defendants include internet search engines, web hosts, domain name registries, individual domain registrars, and payment processors and financial institutions (discussed in Section III(C)(1)(c) below). *See Coach, Inc. v. Does 1–573*, No. 12-cv-1514, slip op. (N.D. Ill. Oct. 15, 2012); *Deckers Outdoor Corp. v. Does 1-100*, No. 12- cv-377, slip op. (N.D. Ill. Apr. 11, 2012) (entering order directed to non-parties). Indeed, in accordance with 15 U.S.C. § 1116(a) and the Court's inherent equitable power, the Court has the power to require domain name registries and registrars to transfer infringing domain names to the plaintiff. *See True Religion Apparel, Inc. v. Xiaokang Lee*, No. 1:11-cv-8242-HB, slip op. (S.D.N.Y. Mar. 12, 2012).

Here, CME Group respectfully requests that the Court enter the Proposed Order, which requires, *inter alia*, that the non-party domain name registrars GoDaddy.com, LLC

10

and Name.com, Inc. transfer certain Infringing Domain Names to CME Group. Additionally, the Proposed Order requires that third-party Verisign, Inc. ("Verisign") change the registrars of record for the domain names <CMErussia.com>, <CMErussians.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com>. Verisign is a domain name registry operator for .com top-level domains, and has contractual relationships with domain name registrars that provide <.com> domain name registration services. *See* Declaration of Angela Simmons ("Simmons Declaration"), Para. 2. Specifically, Verisign has contractual relationships with GoDaddy.com, LLC, Name.com, Inc., Wix.com Inc., and Defendants REG.RU and Regtime, which are the domain name registrars for the <CMErussia.com>, <CMErussians.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> domain names. *Id.* Verisign has confirmed that it will comply with a Court order that instructs Verisign to change the registrars of record for the domain names to a registrar of Plaintiffs' choice. *Id.* at Para. 5. Indeed, Verisign even provided Plaintiffs' counsel with specific language to be included in the Proposed Order to ensure compliance with the order by Verisign. *Id.* at Para. 6. Specifically, Verisign provided the following language:

> The domain name registries for the [CMErussia.com, CMErussians.com, CMEgroupcenters.com, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> domain names], including, but not limited to, [VeriSign, Inc.], within five (5) business days of receipt of this Order shall unlock if necessary and change the registrar of record for the [CMErussia.com, CMErussians.com, CMEgroupcenters.com, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> domain names ] to a registrar of Plaintiff[s'] selection.

11

*Id.*

The Court has good cause for ordering Verisign to change the registrars of record for the <CMErussia.com>, <CMErussians.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> domain names. Because Verisign has agreed to comply with such an order, Verisign will not be prejudiced by the entry of the Proposed Order.

Such an order is not only authorized under federal law and the Court's inherent equitable powers, but is also necessary to stop the harmful conduct by Defendants. Moreover, the Court has previously made such an order in its Temporary Restraining Order and Preliminary Injunction Order (Dkt. Nos. 22 & 57), so it is only logical to enter the same order here.

### c. The Court Is Authorized to Coerce Compliance with Its Lawful Orders and Issue Supplemental Orders.

The Court retains its power to coerce compliance with its lawful orders, and may permit the plaintiff to move for a supplemental order in the event the plaintiff discovers any new infringing conduct by defendants. *See, e.g., True Religion Apparel, Inc.*, slip op. ("due to Defendants' ongoing proliferation of domain names for operation of their counterfeiting activities … True Religion may move the Court for a supplemental order identifying the newly-detected domains"). In addition, in the enforcement of an order, and in accordance with 15 U.S.C. § 1116(a) and the Court's inherent equitable power, the Court also has the power to require non-party payment processors and financial institutions to release funds owned or controlled by defendants to satisfy all or part of a judgment. *Id.*

Here, despite having notice of this action and the Court's TRO and Preliminary

Injunction Order, Defendants have exhibited a pattern of ongoing infringing conduct, including the registration of the new infringing domain names and launch of the new counterfeit websites <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> after the Court's entry of the Preliminary Injunction. Accordingly, given the Defendants' "ongoing proliferation of domain names for operation of their counterfeiting activities," CME Group respectfully requests that the Court enter the Proposed Order, which allows CME Group to supplement the Proposed Order to incorporate and address any new infringing domain names or counterfeit websites owned or controlled by Defendants that are identified in the future. *Id.*

In addition, CME Group respectfully requests that the Court require that the payment processors and financial institutions release to CME Group monies currently held in various Defendants' financial accounts, which receive payments or hold assets on Defendants' behalf, as partial payment for the statutory damages described herein, and to stop Defendants' conduct and deter such conduct in the future. The Court has good cause for ordering the release of money held in accounts owned or controlled by Defendants. Defendants' use of online payment processors is integral to their scheme and enables them to continue to defraud consumers out of their hard-earned money. Thus, such an order is not only authorized under federal law and the Court's inherent equitable powers, but is also necessary to stop the harmful conduct by Defendants and enable CME Group to enforce and recover the monetary judgment described below.

### 2. CME Group Is Entitled to a Monetary Judgment.

The entry of a default judgment establishes, as a matter of law, that Defendants are liable to CME Group as to each cause of action alleged in the Third Amended

Complaint. *See U.S. v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). As detailed below, CME Group seeks an award of statutory damages in lieu of actual damages and profits, which would be difficult to prove in this case, particularly given Defendants' default. Moreover, while the law provides for CME Group's recovery of their attorneys' fees and costs, CME Group foregoes this recovery. *See* 15 U.S.C. §§ 1117(a) & (b), Copyright Act, 17 U.S.C. §§ 505 and 1203(b)(5), and 815 Ill. Comp. Stat. § 510/3. As a result, a hearing on damages is not required because "the amount claimed is … capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.*" Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *see also Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 946 (C.D. Ill. 2014) ("the Court does not find that it is necessary to hold a hearing to ascertain Coach's claimed damages" because "Coach has elected statutory damages, and § 1117(c) derives such damages based on the number of counterfeit marks per type of good or service sold or offered for sale."). As explained below, an award of the maximum amount of statutory damages is appropriate for each claim based upon the difficulty of proving actual damages, the scope of Defendants' willful infringement and phishing activities, Defendants' contempt for this Court and these proceedings, CME Group's decision to forego their attorneys' fees and costs, and based on the harm caused to CME Group and the public at large by Defendants' conduct and the need to deter Defendants from engaging in such conduct in the future.

a. It Is Appropriate and Necessary to Award the Maximum Amount of Statutory Damages on Each of CME Group's Claims.

"A court awarding statutory damages is not required to follow any rigid formula but instead enjoys wide discretion." *Lorillard Tobacco Co. v. S&M Central Service Corp.*, No.

03 C 4986, 2004 WL 2534378, at *4 (N.D. Ill. Nov. 8, 2004) (*quoting Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991)). Within the statutory framework setting the minimum and maximum awards, courts generally consider the following factors in determining the amount of statutory damages: (1) the difficulty or impossibility of proving actual damages; (2) the circumstances of the infringement (e.g., whether it was willful and the harm caused to the public); and (3) the efficacy of damages as a deterrent of future violations. *Id.* Courts may also take into account the value of the plaintiff's trademark(s) and the efforts taken to protect, promote, and enhance the brand. *NBA Properties, Inc. v. Yan Zhou*, No. 16-cv-11117, 2017 WL 4074020, at *3 (N.D. Ill. Sept. 14, 2017) (citing *Lorillard*, 2004 WL 2534378, at *6). Here, the maximum amount of statutory damages is not only warranted based upon the difficulty in proving actual damages and Defendants' willful conduct, but also necessary to deter future infringement.

First, statutory damages are particularly appropriate in this case because it is impossible for CME Group to ascertain evidence of Defendants' actual profits. Indeed, Defendants have not appeared in this case and are in default, which prevents CME Group from obtaining the necessary discovery of documents and other information sufficient to determine Defendants' actual profits. Courts have found that statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure." *Petmed Express, Inc. v. MedPets.com, Inc.*, 336 F Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (noting that "the statutory damage provision, § 1117(c), was added because counterfeit records are frequently nonexistent, inadequate, or deceptively kept making proving actual damages in these cases extremely difficult if not impossible.") (internal quotations omitted).

Moreover, since Defendants' actual profits are impossible to determine, an award of the maximum statutory damages is also necessary because Defendants had the ability to reach a vast customer base through their online conduct.  As the Southern District of New York stated,  "[I]n view of the virtually limitless number of customers available to [defendant] through his Web sites and his unwillingness to terminate his infringing activities despite ample warning, it is clear that an award of [the minimum statutory damages] would plainly be inadequate to compensate the plaintiffs." *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002). Courts have awarded the maximum statutory damages against each defendant in similar cases involving claims of infringement, counterfeiting, and cybersquatting. *See, e.g., Coach, Inc.*, slip op. (awarding maximum statutory damages for willful trademark counterfeiting of $2 million per mark for a total award of $200 million on the counterfeiting claim, and the maximum statutory damages on the cybersquatting claim involving 573 domains for a total of $57.3 million); *Deckers Outdoor Corp.*, slip op. (awarding the maximum statutory damages available on counterfeiting and cybersquatting claims totaling $322,800,000, including $200 million on the counterfeiting claim, and $122.8 million on the cybersquatting claim); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (affirming maximum statutory damages award of $600,000 for cybersquatting claim involving 6 domain names); *True Religion Apparel, Inc.*, slip op. (awarding maximum statutory damages of $8,150,000 as to *each* defendant, including $150,000 for copyright infringement claim involving single copyrighted work and $8,000,000 for claim of willful trademark counterfeiting of 4 trademarks); *Burberry Ltd., et al. v. The Partnerships, et al.*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished (Docket Nos. 44 and 45))

(awarding $2,000,000 in statutory damages per defendant); and *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. Jun. 17, 2013) (awarding $2,000,000 in statutory damages per defendant).

Second, the evidence of Defendants' willful conduct is clear and justifies an award of the maximum statutory damages available. "Willful infringement occurs when a defendant knowingly and intentionally, or with reckless disregard or willful blindness to the plaintiff's rights, infringes a trademark; it may also be inferred from a failure to defend in a suit for trademark infringement." *Coach, Inc.*, 70 F. Supp. 3d at 947. Since Defendants failed to defend this action and have otherwise ignored the Court's orders and these proceedings, Defendants' willfulness is presumed. *See, e.g., Chloe v. Zarafshan*, No. 1:06–cv–3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."); *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("by virtue of its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights.").

The Court does not need to rely upon a presumption of willfulness here because the evidence of record also clearly establishes that Defendants engaged in willful conduct intentionally designed to harm CME Group and the public at large. In particular, despite having actual and constructive notice of CME Group's prior rights to the CME Marks, Defendants registered the Infringing Domain Names and set up the Counterfeit Websites, which feature and prominently use the identical CME, CME GROUP, and Globe Design marks (among other marks listed below) in connection with financial-related services, the

exact services described in the relevant CME Group trademark registrations, and target CME Group's customers, all without authorization from CME Group. (Dkt. # 58, ¶¶ 59-87). Examples of the Counterfeit Websites are shown below:



| CME Group Website | CMEgroupcenter Counterfeit Website & CMEgroupcenters Counterfeit Website |
|---|---|
| * CME Group Website from October 9, 2018 https://web.archive.org/web/20181009175719/https://www.cmegroup.com/ | https://cmegroupcenter.com/ https://cmegroupcenters.com/ |
| CME Group logo used on top left corner, CME's website Oct. 10, 2018 https://web.archive.org/web/20181009175719/https://www.cmegroup.com/ | Infringing copy of CME Group logo used on top left corner, cmegroupcenter.com and cmegroupcenters.com https://cmegroupcenter.com/ https://cmegroupcenters.com/ |

| Subscription Center Section on CME's website home screen | Contact information section in Russian |
|---|---|
|  |  |
| https://web.archive.org/web/20181009175719/https://www.cmegroup.com/ | https://cmegroupcenter.com/<br>https://cmegroupcenters.com/ |



| CME Group Website | CMErussian Counterfeit Website,<br>CMErussia Counterfeit Website,<br>CMEtre Counterfeit Website,<br>CMErepresentation Counterfeit Website,<br>CME-official Counterfeit Website |
|---|---|
| **Corporate logo on original website, used on top left corner**<br>https://www.cmegroup.com/ | **Infringing copy of CME Group logo used on top left corner** |
| **CME Group Subscription Center**<br>https://www.cmegroup.com/ | **Counterfeit Website Subscription Center (translated)** |
| Map with CME's corporate logo with pins locating CME's offices.<br>https://www.cmegroup.com/company/history/global-offices.html | Map used on counterfeited websites |

19



https://web.archive.org/web/20190205042337/https://www.cme group.com/

Defendants Nagovskiy, Golub, Chechurin, Alexandrova, Kochin, and Legato also blatantly copied Copyrighted Materials from the CME Group Website, including text, images, photographs, design, layout, and other features, and display this content at the

Counterfeit Websites, and use identical or nearly identical source code, metatags, and copyrights notices as the authentic CME Group Website. *Id.* Simply put, this is not a case where Defendants have any legitimate reason or need to use CME Group's registered trademarks or copyrighted materials. Instead, the only purpose in using such materials is to lure customers into believing they are visiting the authentic CME Group Website, when they are not, thereby capturing customers' personal information for illicit purposes, including customers in the State of Illinois. Accordingly, Defendants' conduct was willful and justifies an award of the maximum statutory damages available for each claim.

Third, an award of the maximum statutory damages is necessary to deter Defendants and other third parties from engaging in the infringing and fraudulent conduct harming CME Group and the public at large in the future. Courts have held that maximum statutory damages are justified to deter conduct that is *potentially* harmful to public health or safety. *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 170 (E.D.N.Y. 2016) (awarding maximum statutory damages of $10 million for willful trademark counterfeiting, stating "Even though, to date, no adverse effects are known to have been reported from consumption of the counterfeit product, a maximum award is nonetheless warranted to punish and deter such dangerous activity.").

Here, Defendants' conduct not only also raises serious privacy and safety concerns, but has also caused *actual* harm to the public by defrauding customers of their hard-earned money. For example, CME Group identified a consumer review at the website www.otzovik.com describing Defendants' scheme. *See* Declaration of Michael Franklin (Dkt. # 12), Para. 21. Posting under the screen name "stanislava01," the user describes how Defendants use a fake Instagram personality account to attract potential

victims to the Counterfeit Websites and claim "they are [CME Group's] branch in Russia," when they are not, and notes that the CMEgroupcenter Counterfeit Website "was copied from the original, only translated to Russian." *Id.* Importantly, the user details how she made an initial investment of $1,000 believing she was dealing with CME Group, and an additional investment of $3,300 after Defendants claimed her initial investment earned a 70% return in 2 days. *Id.* Unfortunately, according to the user, her money was never returned and there has been "silence" from the Defendants since the money transfer. *Id.* In addition, a review posted to zarabotol24skachat.ru on February 5, 2019 describes a similar experience and points out that multiple online personalities are promoting the scheme and that potential victims also might be contacted via Skype or other social media platforms. *Id.* at Para. 22. Another similar review on the website довериевсети.рф from July 21, 2019 was also identified, which demonstrates the wide scope of Defendants' infringement and phishing scheme. In addition, multiple customers contacted CME Group directly to inquire about the validity of the Counterfeit Websites and emails they received from Defendants. *Id.* at Paras. 8, 23. Although CME Group informed these consumers that the emails and Counterfeit Websites were not legitimate, other users have already been harmed, as demonstrated by stanislava01's experience described above. *Id.* Accordingly, an award of maximum statutory damages is warranted.

Fourth, Defendants have shown contempt for this Court and these proceedings by ignoring the Court's orders despite having actual notice of this case and their obligations under the Court orders for several months, and such conduct justifies an award of maximum statutory damages. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004), *amended in part*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004)

(determining that defendant acted willfully not only because defendant continued to sell counterfeit goods after the suit was filed, but also due to defendant's "bold contempt for the law" exhibited during the course of the litigation). For example, after the filing of this action, Defendants registered the additional Infringing Domain Names CMErussians.com, CMErussia.com, and CMEgroupcenters.com, and launched the Counterfeit Websites at www.CMErussia.com, and www.CMEgroupcenters.com. Defendants continued to operate the Counterfeit Websites despite the Court's orders requiring that they be taken down, and even subsequently launched more Infringing Domain Names and related Counterfeit Websites at www.CMEtre.com, www.CMEgroupru.com, www.CMErepresentation.com, and www.CME-official.com after the Court issued the Preliminary Injunction Order (Dkt. # 57). Indeed, the Counterfeit Websites www.CMErussia.com and www.CME-official.com remain active as of the date of this Motion. Accordingly, Defendants have shown a blatant disregard of the Court's orders, and the award of the maximum statutory damages is necessary to deter Defendants from continuing in this scheme.

Fifth, CME Group's CME®, CME GROUP®, ◉CME Group®, ⊕®, CBOT®, NYMEX®, COMEX®, GLOBEX®, CME GLOBEX®, CLEARPORT®, CME CLEARPORT®, E-MINI®, CME PIVOT®, PIVOT®, CME DIRECT®, and CME DATAMINE® ("CME Registered Marks") are of incalculable value and importance to CME Group. Courts have awarded maximum statutory damages where trademarks are "highly valuable, the counterfeiting was ... on a large scale and would have resulted in substantial profit from the infringement, and there is a strong need to deter the defendants and their ilk from future counterfeiting." *Philip Morris USA Inc. v. U.S. Sun Star Trading,*

*Inc.*, No. CV 08–0068, 2010 WL 2133937, at *11 (E.D.N.Y. Mar. 11, 2010); *see also Innovation Ventures, LLC*, 176 F. Supp. 3d at 169–70 ("There is a strong need to deter future counterfeiting of plaintiffs' trademarks" because "Defendants infringed what plaintiffs' have established are 'incredibly valuable' trademarks."). CME Group uses the CME Registered Marks in advertising, marketing and promotional materials on a nationwide and worldwide basis through various media including the internet, and annually spends millions of dollars on such advertising and promotional efforts. *See* Declaration of Matthew Kelly (Dkt. # 13), Paras. 11, 21-23. In 2017, CME Group and its related entities generated revenues in excess of $3.6 billion dollars (USD), and CME Group's success as the world's largest and most diverse financial exchange is due in part to the extensive efforts CME Group has undertaken to protect, promote, and enhance its CME Registered Marks. *Id.* Indeed, CME Group's extensive use and advertising of the CME Registered Marks has resulted in consumer recognition that the CME Registered Marks identify CME Group as the source of premier financial exchange and risk management services, and trading platform goods and services. *Id.* at Para. 21. Given CME Group's place in the world financial markets and its extensive expenditures to protect and promote its brand, an award of maximum statutory damages is justified. The requested statutory damages are calculated below.

      b.  <u>Award of Statutory Damages for Trademark Counterfeiting Claim.</u>

Defendants willfully used the following registered CME Registered Marks in connection with identical financial-related services at the Counterfeit Websites: CME®, CME GROUP®, CME Group®, ®, CBOT®, NYMEX®, COMEX®, GLOBEX®, CME GLOBEX®, CLEARPORT®, CME CLEARPORT®, E-MINI®, CME

PIVOT®, PIVOT®, CME DIRECT®, and CME DATAMINE® (24 separate registrations; see Exhibit A). Such use of identical marks for identical services constitutes trademark counterfeiting. *See* 15 U.S.C. § 1116(d)(1)(B) (a counterfeit mark is one that is identical to or substantially indistinguishable from a mark registered on the USPTO principal register for the same goods or services sold, offered for sale, or distributed and that is in use). Moreover, as detailed above, such use of the identical marks for identical services constitutes willful trademark counterfeiting. Indeed, not only is willfulness inferred from Defendants' default, but also clearly established by the factual record. *See Coach*, 70 F. Supp. 3d at 947.

Under 15 U.S.C. § 1117(c), the Court is entitled to award CME Group statutory damages in an amount up to $2,000,000 per mark per type of good or service sold, offered for sale, or distributed by Defendants. Here, CME Group owns 24 different registrations for the marks at issue (see Exhibit A), which are and/or were used by Defendants on each of the Counterfeit Websites. (Dkt. # 58).

In light of Defendants bad faith in registering and using the CME Registered Marks in connection with an illicit financial scheme, as well as the contempt Defendants have shown for the judicial process and these proceedings, an award of statutory damages as to CME Group's trademark counterfeiting claim in the amount of $48,000,000 against each Defendant is not only warranted but also necessary to repair the harm caused to CME Group and to deter future infringement. This calculation is based on the statutory award of $2,000,000 multiplied by the 24 marks at issue. 15 U.S.C. § 1117(c)(2).

### c. Award of Statutory Damages for Cybersquatting Claim.

CME Group is also entitled to statutory damages on its cybersquatting claim based

on Defendants Nagovskiy's, Chechurin's, Golub's, Alexandrova's, Kochin's, and Legato's registration and use of the Infringing Domain Names, a total of nine (9) different domains. Under 15 U.S.C. 1117(d), this Court is entitled to award CME Group, as the prevailing plaintiff, statutory damages up to $100,000 for each domain name registered and/or used in violation of the ACPA. Defendants Nagovskiy's, Chechurin's, Golub's, Alexandrova's, Kochin's, and Legato's conduct was willful, and Defendants continue to ignore this Court's orders requiring transfer of the remaining Infringing Domain Names. Accordingly, the maximum statutory damages amount of $100,000 per domain name is warranted in this case. The total statutory damages award for the cybersquatting claim is $900,000 ($100,000 per domain name multiplied by 9 domain names).

### d. Award of Statutory Damages for Copyright Infringement Claim.

Under 17 U.S.C. § 504(c), the Court is entitled to award the prevailing plaintiff statutory damages up to $150,000 for each copyrighted work used in violation of the Copyright Act. Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost intentionally copied CME Group's copyrighted materials, for which CME Group owns four valid U.S. Copyright Registration Nos. VA 1-847-974, VA 2-004-052, VA 2-140-165, and VA 2-140-166, and intentionally used such materials at the Counterfeit Websites. In light of Defendants' willful conduct and refusal to cooperate or appear in these proceedings, CME Group requests that the maximum statutory damages amount of $600,000 be awarded to CME Group ($150,000 per work multiplied by 4 copyright registrations).

### e. Award of Statutory Damages for DMCA Claim.

CME Group requests statutory damages as a result of Defendants Nagovskiy's,

Chechurin's, Golub's, Alexandrova's, Kochin's, Legato's, OVH's, EuroByte's, and Masterhost's alteration and removal of copyright management information in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(c) ("DMCA"). Under 17 U.S.C. § 1203(c)(3)(B), this Court is entitled to award the prevailing plaintiff statutory damages up to $25,000 for each violation of the DMCA. In light of the bad faith demonstrated by Defendants in their alteration and/or removal of CME Group's copyright management information (i.e. the Copyright Notice and the Contact Information) from the bottom of each of CME Group's copyrighted works (Copyright Reg. Nos. VA 1-847-974, VA 2-004-052, VA 2-140-165, and VA 2-140-166) in order to deceive consumers into believing the Counterfeit Websites are legitimate, as well as the contempt Defendants have shown for this process, the maximum statutory damage amount of $25,000 for each violation by Defendants is warranted in this case. The total award of statutory damages for the DMCA claim is $200,000 ($25,000 multiplied by the eight (8) Counterfeit Websites in which the copyright management information was removed/altered).

f.  <u>Award of Statutory Damages for Phishing Claim.</u>

CME Group is also entitled to an award of statutory damages under Illinois' Anti-Phishing Act, 740 ILCS 7/1 *et seq.* Under 740 ILCS 7/15 (a), this Court is entitled to award a prevailing plaintiff statutory damages of up to $500,000. Moreover, the Court may treble the recoverable damages when the defendant has engaged in a pattern and practice of phishing activities. *See* 740 ILCS 7/15 (c). Defendants have engaged in such a pattern and practice by registering nine (9) different domain names and setting up and operating eight (8) different phishing websites (many of which were registered after CME Group filed this lawsuit). These websites were designed to obtain personally identifiable

27

information from unsuspecting consumers, including consumers in Illinois. Accordingly, the maximum statutory damages amount of $500,000 against Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost is warranted, and CME Group requests that this amount be trebled based on Defendants' pattern of conduct, for a total of $1,500,000.

## IV. **CONCLUSION**

In light of the foregoing, CME Group requests that the Court enter CME Group's Proposed Order for default judgment finding that Defendants' willful conduct renders them liable for CME Group's claims for willful trademark counterfeiting, trademark infringement, dilution, unfair competition, cybersquatting, willful copyright infringement, violations of the Digital Millennium Copyright Act Copyright Management Information provisions, anti-phishing, and violations of Illinois state and common law. CME Group further requests that the Court permanently enjoin Defendants and order permanent transfer of the Infringing Domain Names to CME Group, including the right to supplement for future conduct. Lastly, CME Group requests that this Court award total statutory damages to CME Group in the amounts outlined above related to the harm resulting from Defendants' acts of infringement and phishing, including the right to seek recovery from third parties money held by these Defendants and as a deterrent against such conduct in the future.

Respectfully submitted,

CME GROUP INC.
CHICAGO MERCANTILE EXCHANGE INC.
NEW YORK MERCANTILE EXCHANGE, INC.
COMMODITY EXCHANGE, INC.
BOARD OF TRADE OF THE CITY OF
CHICAGO, INC.
PIVOT, INC.


Dated: September 23, 2019          By: /s/ Christian S. Morgan
                                   Joseph V. Norvell (Reg. No. 6225747)
                                   Joseph T. Kucala, Jr. (Reg. No. 6275312)
                                   Angela J. Simmons (Reg. No. 6289024)
                                   Christian S. Morgan (Reg. No. 6327350)
                                   Matthew D. Witsman (Reg. No. 6327790)
                                   NORVELL IP LLC
                                   333 S. Wabash Ave., Suite 2700
                                   Chicago, Illinois 60604
                                   Telephone:   (888) 315-0732
                                   Facsimile:   (312) 268-5063
                                   courts@norvellip.com

                                   *Attorneys for Plaintiffs*