**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc., | Civil Action No. 1:19-cv-01621 |
| Plaintiffs, | Judge Sharon Johnson Coleman |
| v. | Magistrate Judge Sheila M. Finnegan |
| Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, Ludmila Alexandrova, Viktor Kochin, Legato LLC, Wix.com Ltd., Regtime, Ltd., Masterhost LLC, OVH SAS, EuroByte LLC, Registrar of Domain Names REG.RU LLC, and Does 1-3, | |
| Defendants. | |

ORDER GRANTING PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT AND ENTRY OF FINAL JUDGMENT,
PERMANENT INJUNCTION AND ORDER FOR RELIEF

Plaintiffs CME Group Inc., Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc., Commodity Exchange, Inc., Board of Trade of the City of Chicago, Inc., and Pivot, Inc. (collectively, "CME Group") moved for an entry of default judgment against Defendants Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, Ludmila Alexandrova, Viktor Kochin, Legato LLC, Regtime, Ltd., Masterhost LLC, OVH SAS, EuroByte LLC, and Registrar of Domain Names REG.RU LLC (collectively, "Defendants") finding Defendants liable for CME Group's claims and (1) permanently enjoining Defendants' unlawful conduct, (2) permanently transferring the relevant domain names, (3) authorizing enforcement of this order and supplemental orders, and (4) entering a monetary judgment based upon Defendants' willful and unlawful conduct. The Court having read and considered CME Group's Motion, pleadings, moving papers and declarations

submitted finds as follows:

**Findings of Fact and Conclusions of Law**

1.      A court may enter a default judgment when the non-moving party has "failed to plead or otherwise defend" itself in the action, and the decision to grant or deny default judgment lies within the court's discretion. *Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 710 (N.D. Ill. 2014). Here, CME Group properly served Defendants with the Complaint, amended complaints, the Court's orders and minute entries, and the other pleadings/filings in this case. *See* Returns of Service, Dkt. Nos. 37, 39, 40, 49-51, 77-80, 82. Despite having actual notice of these proceedings for at least two months (and some Defendants have had actual notice for nearly six months), Defendants failed to appear, answer, plead, or otherwise defend this action. Therefore, an entry of default judgment against Defendants is appropriate and necessary to stop the harm caused by Defendants' conduct. Fed. R. Civ. P. 55(b).

2.      When a court determines that a defendant is in default, all well-pled allegations in the complaint will be taken as true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action in the complaint." *Coach, Inc. v. Tom's Treasure Chest*, No. 2:10–cv–243, 2011 WL 4399355, at *2 (N.D. Ind. Sept. 21, 2011) (finding assertions of complaint "taken as true" in determining willful infringement in connection with selling knockoff handbags containing Coach marks); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). As a result, CME Group's claims are well pled, and Defendants are liable to CME Group for each cause of action alleged in the Third Amended Complaint. *Wehrs*, 688 F.3d at 892.

### A.  CME Group Is Entitled to Permanent Injunctive Relief

3.      A party seeking to obtain a permanent injunction order must show that: (1) it has

suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. *See MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016) (quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007)). Notably, these are the same requirements to obtain a preliminary injunction. This Court has already found that all of these requirements have been satisfied when it entered the Preliminary Injunction Order. (Dkt. # 57). That is, the Court found that CME Group's overwhelming evidence established that they have suffered irreparable injury for which no adequate remedy at law is available, that the balance tipped in CME Group's favor, and the public interest favored issuance of the preliminary injunction order. *Id.*

4.      Moreover, Defendants' egregious and infringing conduct harmed both CME Group and the public at large. CME Group had no control over Defendants' use of CME Group's registered trademarks CME®, CME GROUP®, ⬤CME Group ®, ⊕®, CBOT®, NYMEX®, COMEX®, GLOBEX®, CME GLOBEX®, CLEARPORT®, CME CLEARPORT®, E-M INI®, CME PIVOT®, PIVOT®, CME DIRECT®, and CME DATAMINE® (collectively, the "CME Marks," identified in Exhibit A), and therefore was harmed. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (stating "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of defendants' goods"). In addition, damages occasioned by trademark infringement are presumed to be irreparable because it is virtually impossible to ascertain the precise economic consequences of intangible harms caused by such violations, such as damage to reputation and loss of goodwill. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 881, 890 (7th

3

Cir. 2001) (citations omitted). Absent a permanent injunction, there is nothing to prevent Defendants from engaging in infringing conduct in the future. *See* Restatement Third, Unfair Competition, Section 35, comment b (1995) ("In cases of deceptive marketing, trademark infringement, or trademark dilution, a prevailing plaintiff is ordinarily awarded injunctive relief to protect both the plaintiff and the public from the likelihood of future harm."). Accordingly, a Permanent Injunction is warranted in order to protect CME Group and the public from the likelihood of future harm.

### B. Permanent Transfer of the Infringing Domain Names Is Required.

5.     The Preliminary Injunction Order contains an express provision requiring that the Infringing Domain Names be transferred to CME Group, and this provision is hereby made permanent, as detailed in the terms of this Order below.

6.     Pursuant to Rule 65(d)(2)(A) and in accordance with 15 U.S.C. § 1116(a) and the Court's inherent equitable power, this Court has the authority to obligate third-parties to comply with a permanent injunction order when they are "in active concert or participation with" the defendants, and to require domain name registries and registrars to transfer infringing domain names to the plaintiff. *See Coach, Inc. v. Does 1–573*, No. 12-cv-1514, slip op. (N.D. Ill. Oct. 15, 2012); *True Religion Apparel, Inc. v. Xiaokang Lee*, No. 1:11-cv-8242-HB, slip op. (S.D.N.Y. Mar. 12, 2012). The Court also retains its power to coerce compliance with its lawful orders, and may permit the plaintiff to move for a supplemental order in the event the plaintiff discovers any new infringing conduct by defendants. *True Religion*, slip op. ("due to Defendants' ongoing proliferation of domain names for operation of their counterfeiting activities … True Religion may move the Court for a supplemental order identifying the newly-detected domains").

7.     As detailed in the terms of this Order below, the Court directs that the non-party

domain name registrars GoDaddy.com, LLC ("GoDaddy") and Name.com, Inc. ("Name.com"), transfer certain Infringing Domain Names to CME Group, and that third-party Verisign, Inc. ("Verisign") change the registrars of record for the domain names <CMErussia.com>, <CMErussians.com>, <CMEgroupcenters.com>, <CMEtre.com>, <CMEgroupru.com>, <CMErepresentation.com>, and <CME-official.com> so that these domains can be transferred to CME Group. Verisign has confirmed that it will comply with a Court Order that instructs it to change the registrars of record for the domain names to a registrar of Plaintiffs' choice, and provided specific language to be included in the Order. *See* Declaration of Angela Simmons, Paras. 5, 6. Accordingly, Verisign will not be prejudiced by the entry of the Proposed Order.

## C. **CME Is Entitled to Seek Future Enforcement.**

8.      In addition, despite having notice of this action and the Court's TRO and Preliminary Injunction Order, Defendants have exhibited a pattern of ongoing infringing conduct, including registering new infringing domain names and launching new counterfeit websites after the Court's entry of the Preliminary Injunction. Accordingly, an Order allowing CME Group to supplement this Order to identify any new infringing domain names or counterfeit websites by Defendants is appropriate.

## D.      **CME Group Is Entitled to a Monetary Judgment and Enforcement Mechanisms Based on Defendants' Willful Conduct.**

9.      CME Group seeks an award of statutory damages in lieu of actual damages and profits, and foregoes recovery of their attorneys' fees and costs. As a result, a hearing on damages is not required because "the amount claimed is … capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983).

10.      "A court awarding statutory damages is not required to follow any rigid formula

5

but instead enjoys wide discretion." *Lorillard Tobacco Co. v. S&M Central Service Corp.*, No. 03 C 4986, 2004 WL 2534378, at *4 (N.D. Ill. Nov. 8, 2004) (*quoting Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991)). Within the statutory framework setting the minimum and maximum awards, courts generally consider the following factors in determining the amount of statutory damages: (1) the difficulty or impossibility of proving actual damages; (2) the circumstances of the infringement (e.g., whether it was willful and the harm caused to the public); and (3) the efficacy of damages as a deterrent of future violations. *Id.* Courts may also take into account the value of the plaintiff's trademark(s) and the efforts taken to protect, promote, and enhance the brand. *NBA Properties, Inc. v. Yan Zhou*, No. 16-cv-11117, 2017 WL 4074020, at *3 (N.D. Ill. Sept. 14, 2017) (citing *Lorillard*, 2004 WL 2534378, at *6). Here, the maximum amount of statutory damages is not only warranted based upon the difficulty in proving actual damages and Defendants' willful conduct, but also necessary to deter future infringement.

11.     First, statutory damages are particularly appropriate in this case because it is impossible for CME Group to ascertain evidence of Defendants' actual profits since Defendants have not appeared in this case and are in default. *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (noting that "the statutory damage provision, § 1117(c), was added because counterfeit records are frequently nonexistent, inadequate, or deceptively kept making proving actual damages in these cases extremely difficult if not impossible.") (internal quotations omitted). Moreover, an award of the maximum statutory damages is necessary because Defendants had the ability to reach a vast customer base through their online conduct. *See Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) ("In view of the virtually limitless number of customers available to [defendant] through his Web sites and his unwillingness to terminate his infringing activities despite ample warning, it is clear that an award

6

of [the minimum statutory damages] would plainly be inadequate to compensate the plaintiffs."). Also, multiple Courts have awarded maximum statutory damages in other cases of willful trademark counterfeiting. *See Coach, Inc.*, slip op. (awarding maximum statutory damages for willful trademark counterfeiting of $2 million per mark for total of $200 million, and maximum statutory damages on cybersquatting claim involving 573 domains for total of $57.3 million); *Deckers Outdoor Corp.*, slip op. (awarding maximum statutory damages of $200 million on counterfeiting claim and $122.8 million on cybersquatting claim). An award of the maximum statutory damages against each Defendant is justified. *True Religion Apparel, Inc.*, slip op. (awarding maximum statutory damages of $8,000,000 as to *each* defendant for claim of willful trademark counterfeiting of 4 trademarks); *see also Burberry Ltd., et al. v. The Partnerships, et al.*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished (Docket Nos. 44 and 45)) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. Jun. 17, 2013) (awarding $2,000,000 in statutory damages per defendant).

*12.*     Second, the evidence of Defendants' willful conduct is clear and justifies an award of maximum statutory damages. "Willful infringement occurs when a defendant knowingly and intentionally, or with reckless disregard or willful blindness to the plaintiff's rights, infringes a trademark; it may also be inferred from a failure to defend in a suit for trademark infringement." *Coach, Inc.*, 70 F. Supp. 3d at 947; *see also Chloe v. Zarafshan*, No. 1:06–cv–3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."). Since Defendants failed to defend this action and have otherwise ignored the Court's orders and these proceedings, Defendants' willfulness is presumed. *Id.*

*13.*     The Court does not need to rely upon a presumption of willfulness here because the

evidence of record also clearly establishes that Defendants engaged in willful conduct intentionally designed to harm CME Group and the public at large. Despite having actual and constructive notice of CME Group's prior registered rights to the CME Marks, Defendants registered the Infringing Domain Names and set up the Counterfeit Websites, which feature and prominently use the identical CME, CME GROUP, and Globe Design marks (among other marks) in connection with financial-related services, the exact services described in the relevant CME Group trademark registrations, and target CME Group's customers, all without authorization from CME Group. (Dkt. # 58, ¶¶ 59-87). Defendants also blatantly copied from CME Group's website at www.cmegroup.com ("CME Group Website") material that is wholly original and copyrightable subject matter protected by copyright laws ("Copyrighted Materials"), display this content at the Counterfeit Websites, and use identical or nearly identical source code, metatags, and copyright notices as the authentic CME Group Website. *Id.* Simply put, this is not a case where Defendants have any legitimate reason or need to use CME Group's registered CME Marks or Copyrighted Materials. Instead, the only purpose in using such materials is to lure customers into believing they are visiting the authentic CME Group Website, when they are not, thereby capturing customers' personal information for illicit purposes.

14. Third, an award of the maximum statutory damages is necessary to deter Defendants and other third parties from engaging in the infringing and fraudulent conduct harming CME Group and the public at large in the future. Courts have held that maximum statutory damages are justified to deter conduct that is *potentially* harmful to public health or safety. *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 170 (E.D.N.Y. 2016) (awarding maximum statutory damages of $10 million for willful trademark counterfeiting, stating "Even though, to date, no adverse effects are known to have been reported from

8

consumption of the counterfeit product, a maximum award is nonetheless warranted to punish and deter such dangerous activity."). Here, Defendants' conduct not only also raises serious privacy and safety concerns, but has also caused *actual* harm to the public by defrauding customers of their hard-earned money. CME Group provided multiple examples of actual confusion in the marketplace, including multiple consumers that were defrauded thousands of dollars by Defendants' scheme. Therefore, an award of the maximum statutory damages is necessary to protect the consuming public and to deter Defendants and their ilk in the future.

15. Fourth, Defendants have shown contempt for this Court and these proceedings by ignoring the Court's orders despite having actual notice of this case and their obligations under the Court orders for several months, and such conduct justifies an award of maximum statutory damages. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004), *amended in part*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004). For example, after the filing of this action and again after the Court issued the Preliminary Injunction Order, Defendants registered additional Infringing Domain Names and launched new Counterfeit Websites, and continued to operate the Counterfeit Websites despite the Court's orders requiring that they be taken down. Indeed, to date, the Counterfeit Websites www.CMErussia.com and www.CME-official.com remain active. Accordingly, Defendants have shown a blatant disregard of the Court's orders, and the award of the maximum statutory damages is necessary to deter Defendants from continuing in this scheme.

16. Fifth, CME Group's Marks are of incalculable value and importance to CME Group. Courts have awarded maximum statutory damages where trademarks are "highly valuable, the counterfeiting was ... on a large scale and would have resulted in substantial profit from the infringement, and there is a strong need to deter the defendants and their ilk from future counterfeiting." *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. CV 08–0068, 2010 WL

2133937, at *11 (E.D.N.Y. Mar. 11, 2010). CME Group uses the CME Marks in advertising, marketing and promotional materials on a nationwide and worldwide basis through various media including the internet, and annually spends millions of dollars on such advertising and promotional efforts. *See* Declaration of Matthew Kelly (Dkt. # 13), Paras. 11, 21-23. In 2017, CME Group and its related entities generated revenues in excess of $3.6 billion dollars (USD), and such success is no doubt due in part to CME Group's extensive efforts to protect, promote, and enhance its CME Marks. *Id.* Given CME Group's place in the world financial markets and extensive expenditures to protect and promote their brands, an award of maximum statutory damages is justified.

17.     Based on the foregoing facts and pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court finds that Defendants' liability for CME Group's claims for willful trademark counterfeiting, trademark infringement, dilution, unfair competition, cybersquatting, willful copyright infringement, violations of the Digital Millennium Copyright Act Copyright Management Information provisions, anti-phishing, and violations of Illinois state and common law is clear and undisputed. Therefore, CME Group's Motion for Default Judgment is granted, and default judgment is hereby entered against all Defendants.

## <u>FINAL JUDGMENT, PERMANENT INJUNCTIVE AND ORDER FOR RELIEF</u>
### <u>AGAINST ALL DEFENDANTS</u>

*1.*     THIS COURT HEREBY FINDS that DEFENDANTS Dmitro Nagovskiy, Konstantin Chechurin, Evgeniy Golub, Ludmilla Alexandrova, Viktor Kochin, Legato LLC, Regtime Ltd., Masterhost LLC, OVH SAS, EuroByte LLC, and Registrar of Domain Names REG.RU LLC ("Defendants") are liable for willful federal trademark counterfeiting and infringement (15 U.S.C. § 1114), federal trademark dilution (15 U.S.C. § 1124(c)), federal unfair competition (15 U.S.C. § 1125(a)), Illinois deceptive trade practices (815 Ill. Comp. Stat. 510/1 *et*

*seq.*), Illinois consumer fraud and deceptive business practices (815 Ill. Comp. Stat. 505/1 *et seq.*), and Illinois common law unfair competition and trademark dilution.

2.     IT IS ORDERED that DEFENDANTS, and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be permanently enjoined and restrained from:

A.     Using the CME Marks, including but not limited to the marks CME, CME,

CME GROUP, , , CBOT, NYMEX, COMEX, GLOBEX, CME GLOBEX, CLEARPORT, CME CLEARPORT, E-MINI, CME PIVOT, PIVOT, CME DIRECT, CME STP, CME DATAMINE, CHICAGO MERCANTILE EXCHANGE, CHICAGO BOARD OF TRADE, NEW YORK MERCANTILE EXCHANGE or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not genuine CME Group goods or services or not authorized by CME Group;

B.     Using any name, mark, or domain name that wholly incorporates the CME Marks or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the CME Marks;

C.     Registering, transferring, selling, owning or exercising control over any domain name that incorporates, in whole or in part, the CME Marks or anything confusingly similar thereto;

D.     Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendants are in any way affiliated,

connected, or associated with CME Group or its goods and services;

E.   Licensing or authorizing others to use the CME Marks or any confusingly similar mark;

F.   Injuring CME Group's business reputation and the goodwill associated with the CME Marks, and from otherwise unfairly competing with CME Group in any manner whatsoever;

G.   Passing off Defendants' goods or services as those of CME Group;

H.   Committing any acts which will blur or dilute, or are likely to blur or dilute the distinctive quality of the famous CME Marks;

I.   Reproducing and displaying the Copyrighted Materials;

J.   Violating any of the exclusive rights owned by CME Group in the Copyrighted Materials or any other materials in which CME Group owns copyright; and

K.   Otherwise infringing upon the copyrights owned by CME Group.

3.   IT IS FURTHER ORDERED that DEFENDANTS deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendants that bear the CME Marks or any other mark that is likely to be confused with the CME Marks.

4.   IT IS FURTHER ORDERED that DEFENDANTS, and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be ordered to transfer ownership of the Infringing Domain Names and any other domain names under the control of Defendants, or their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and

attorneys, as well as all those in active concert or participation with them, that incorporate, in whole or in part, the CME Marks or anything confusingly similar thereto, to CME Group.

5.      IT IS FURTHER ORDERED that the domain name registrars Name.com and GoDaddy, and domain name registrar Defendants REG.RU, and Regtime, within five (5) business days of the receipt of the Court's final judgment and order, shall unlock and transfer ownership of the Infringing Domain Names and any other domain names under the control of Defendants, or their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, that incorporate, in whole or in part, the CME Marks or anything confusingly similar thereto, to an account controlled by CME Group, and that the domain name registrars shall take any steps necessary to transfer the Infringing Domain Names and any other domain names to an account of CME Group's selection.

6.      IT IS FURTHER ORDERED that the domain name registries, including, but not limited to, Verisign, Inc., within five (5) business days of the receipt of the Court's final judgment and order, shall unlock, if necessary, and change the registrar of record for the Infringing Domain Names and any other domain names under the control of Defendants, or their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, to a registrar of CME Group's selection.

7.      IT IS FURTHER ORDERED that, because of Defendants' willful actions and pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 1203 and 815 Ill. Comp. Stat. § 505/10a *et seq.*, CME Group be awarded monetary relief in the amount of $48,000,000 USD against each Defendant. This calculation is based on the statutory award of $2,000,000 multiplied by the 24 different trademark registrations at issue. 15 U.S.C. § 1117(c)(2).

8.      IT IS FURTHER ORDERED that, pursuant to 15 U.S.C. § 1116, Defendants be

directed to file with the Court and serve on CME Group within thirty (30) days after issuance of this final judgment and order, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the final judgment and order.

9.      IT IS FURTHER ORDERED that those in privity with, working with, or providing services of any kind to Defendants Nagovskiy, Golub, Chechurin, Alexandrova, Kochin, and Legato, and those with notice or receipt of the final judgment and order, including Name.com, GoDaddy, Defendants OVH, Regtime, Masterhost, EuroByte, and REG.RU, and any Internet search engines, domain name registrars, domain name registries, Internet Service Providers, and web hosts, shall (a) be and are permanently restrained and enjoined from facilitating access to any and all websites and accounts through which Defendants engage in the counterfeiting use of the CME Marks, including but not limited to the Infringing Domain Names, Counterfeit Websites, and any account(s) associated with the same, (b) be and are restrained and enjoined from altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in the actual or constructive care, custody or control of Defendants that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located; (c) be ordered to preserve copies of all documents, files, electronically stored information and things relating to the Infringing Domain Names and Counterfeit Websites and take steps to retrieve files that may have been deleted before entry of final judgment and order; (d) be ordered to provide any and all identification, contact and registration information associated with the Infringing Domain Names; and (e) be ordered to produce any and all documents and electronically stored information regarding access, download, and visitors to the Counterfeit Websites.

## AGAINST DEFENDANTS
## NAGOVSKIY, CHECHURIN, GOLUB, ALEXANDROVA, KOCHIN, LEGATO

10.    THIS COURT HEREBY FINDS that DEFENDANTS Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, and Legato are liable for cybersquatting in violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

11.    IT IS ORDERED that, because of Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, and Legato's willful actions and pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 1203, CME Group be awarded monetary relief in the amount of $900,000 USD. This calculation is based on the statutory award of $100,000 multiplied by the nine (9) Infringing Domain Names at issue. 15 U.S.C. 1117(d).

## AGAINST DEFENDANTS
## NAGOVSKIY, CHECHURIN, GOLUB, ALEXANDROVA, KOCHIN, LEGATO, OVH, EUROBYTE, & MASTERHOST

12.    THIS COURT HEREBY FINDS that DEFENDANTS Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost are liable for copyright infringement (17 U.S.C. § 101 *et seq.*), violations of the Copyright Management Information provisions of the Digital Millennium Copyright Act Copyright (17 U.S.C. § 1202 *et seq.*), and phishing in violation of the Illinois Anti-Phishing Act (740 Ill. Comp. Stat. 7/1 *et seq.*).

13.    IT IS ORDERED that, because of Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost's willful actions and pursuant to 17 U.S.C. § 504, CME Group be awarded monetary relief in the amount of $600,000 USD. This calculation is based on the statutory award of $150,000 multiplied by the four (4) copyrighted works registered and owned by CME Group that were infringed by Defendants. 17 U.S.C. § 504(c)

14.    IT IS FURTHER ORDERED that, because of Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost's willful actions and

pursuant to 17 U.S.C. § 1203, CME Group be awarded monetary relief in the amount of $200,000 USD. This calculation is based on the statutory award of $25,000 multiplied by the eight (8) Counterfeit Websites in which the copyright management information was removed/altered by Defendants.

15.    IT IS FURTHER ORDERED that, because of Defendants Nagovskiy, Chechurin, Golub, Alexandrova, Kochin, Legato, OVH, EuroByte, and Masterhost's willful actions in violation of 740 Ill. Comp. Stat. 7/1 *et seq.*, the Anti-Phishing Act, CME Group be awarded monetary relief in the amount of $1,500,000 USD. This calculation is based on the statutory award of $500,000, and is trebled based on Defendants' pattern of conduct. 740 ILCS 7/15 (a), (c).

## ENFORCEMENT AND JURISDICTION

16.    IT IS FURTHER ORDERED that monies currently held in various Defendants' accounts held by banks, savings and loan associations, payment processors or other financial institutions or merchant account providers, payments providers, third party processors, credit card associations (e.g., MasterCard and VISA), which receive payments or hold assets on Defendants' behalf, are hereby released to CME Group as partial payment of the above-mentioned damages;

17.    IT IS FURTHER ORDERED that in accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, until CME Group has recovered the full payment of monies owed to them by any Defendant under this Final Judgment, Permanent Injunction and Order for Relief ("Permanent Injunction Order"), in the event CME Group discovers new monies or accounts belonging to or controlled by any Defendant, CME Group shall have the ongoing authority to serve this Permanent Injunction Order on any party controlling or otherwise holding such accounts or other merchant account providers, payment providers, or third party processors (collectively, "Account Holder");

18.     IT IS FURTHER ORDERED that Account Holder shall immediately locate and restrain all accounts belonging to or controlled by such Defendants from transferring or disposing of any money, stocks or other of such Defendant's assets, not allowing such funds to be transferred or withdrawn by such Defendant and shall provide CME Group with the information relating to those websites and/or accounts;

19.     IT IS FURTHER ORDERED that after thirty (30) days following the service of this Permanent Injunction Order on such Defendant and Account Holder, Account Holder shall transfer all monies in the restrained accounts to CME Group, unless the Defendant has filed with the Court and served upon CME Group's counsel a written request that such monies be exempted from this Permanent Injunction Order;

20.     IT IS FURTHER ORDERED that any Defendant may upon three (3) days' written notice to the Court and CME Group's counsel, upon proper showing, appear and move for the dissolution or modification of the provisions of this Permanent Injunction Order concerning the restriction upon transfer of such new monies or accounts belonging to or controlled by any Defendant;

21.     IT IS FURTHER ORDERED that in accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, and due to Defendants' ongoing proliferation of domain names for operation of their counterfeiting activities, in the event CME Group discovers any new domain names ("Newly-Detected Domains") registered or operated by any Defendant containing the CME Marks or marks confusingly similar thereto and/or used in conjunction with the sale of counterfeit goods or services, CME Group may move the Court for a supplemental order ("Supplemental Order") identifying the Newly-Detected Domains and websites associated with the Newly-Detected Domains ("Newly-Detected Websites");

22.     IT IS FURTHER ORDERED that after thirty (30) days following the service of such a Supplemental Order, the domain name registries and/or individual registrars holding and/or listing one or more of the Newly-Detected Domains, shall transfer the Newly-Detected Domains to the ownership and control of CME Group, including, *inter alia*, by changing the registrar of record to the registrar of CME Group's choosing, unless the Defendant has filed with the Court and served upon CME Group's counsel a written request that such Newly-Detected Domains be exempted from this Permanent Injunction Order or unless CME Group requests that the domain name registration for the specific domain names by deleted rather than transferred;

23.     IT IS FURTHER ORDERED that after thirty (30) days following the service of such a Supplemental Order, the third party service providers, including without limitation, Internet Service Providers ("ISPs"), web hosts, back-end service providers, web designers, and sponsored search engine or ad-word providers, hosting content that is associated with one or more of the Newly-Detected Websites, shall immediately remove any and all Copyrighted Materials;

24.     IT IS FURTHER ORDERED that any Defendant may upon three (3) days' written notice to the Court and CME Group's counsel, upon proper showing, appear and move for the dissolution or modification of the provisions of this Permanent Injunction Order or Supplement Order concerning the transfer of such Newly-Detected Domains belonging to or controlled by any Defendant or the removal of any content on the Newly-Detected Websites;

25.     IT IS FURTHER ORDERED that CME Group may continue to obtain discovery by providing actual notice, pursuant to subpoena or otherwise, of this Permanent Injunction Order to any of the following: (1) Defendants, their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, attorneys, and those in active concert or participation with them; (2) any banks, savings and loan associations, payment processors or other financial

institutions, or other merchant account providers, payments providers, third party processors, credit card associations (e.g., MasterCard and VISA), which receive payments or hold assets on Defendants' behalf; and (3) any third party service providers, including without limited, ISPs, web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, or online third-party selling platforms who have provided services for Defendants (collectively, "Third Party Service Providers");

26.    IT IS FURTER ORDERED that any Third Party Service Providers shall within fourteen (14) days after receipt of such notice, provide copies of all documents and records in such person or entity's possession or control relating to:

        (a)    The identities and addresses of Defendants, their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, attorneys, and those in active concert or participation with them and the locations and identities of Defendants' operations, including without limitation, identifying information associated with Defendants' Counterfeit Websites, Infringing Domain Names, and financial accounts; and

        (b)    Any financial accounts owned or controlled by Defendants, including their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, attorneys, and those in active concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions or merchant account providers, payment providers, third party processors, credit card associations;

27.     IT IS FURTHER ORDERED that this Court shall retain jurisdiction over the parties and the subject matter of this litigation for the purpose of interpretation and enforcement of this Default Judgment and Permanent Injunction Order.

28.     IT IS FURTHER ORDERED that this Final Judgment, Permanent Injunction and Order for Relief is effective as of [DATE].

IT IS SO ORDERED.

Date: 9/27/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

20

# Exhibit A

| Mark | Reg. No. | Int'l Classes | Status |
|---|---|---|---|
| **CME®** | 1,085,681 | 36 | Incontestable |
| **CME®** | 3,084,640 | 9 & 42 | Incontestable |
| **CME GROUP®** | 3,367,684 | 36 | Incontestable |
| **CME DATAMINE®** | 3,352,992 | 36 | Incontestable |
| **CME GLOBEX®** | 3,193,924 | 36 | Incontestable |
| **CME DIRECT®** | 4,358,467 | 9, 36 & 42 | Registered |
| **CME GROUP®** | 4,544,078 | 9, 36 & 42 | Registered |
| **⬤ CME Group ®** | 4,544,077 | 9, 36 & 42 | Registered |
| **CME CLEARPORT®** | 4,535,988 | 9, 36 & 42 | Registered |
| **CME PIVOT®** | 5,376,163 | 9, 35, 38 & 42 | Registered |
| **CBOT ®** | 1,716,422 | 36 | Incontestable |
| **NYMEX®** | 1,731,593 | 36 | Incontestable |
| **NYMEX®** | 2,656,475 | 36 | Incontestable |
| **NYMEX ®** | 3,436,974 | 36 | Incontestable |
| **COMEX®** | 1,036,378 | 36 | Incontestable |
| **COMEX®** | 5,483,800 | 36 | Registered |
| **🌐®** | 4,369,249 | 9, 36 & 42 | Registered |
| **CLEARPORT®** | 3,388,102 | 9, 36 & 42 | Incontestable |
| **GLOBEX®** | 1,576,888 | 42 | Incontestable |
| **GLOBEX®** | 2,448,961 | 36 | Incontestable |
| **GLOBEX®** | 4,684,887 | 36 | Incontestable |
| **GLOBEX®** | 5,166,758 | 9 | Registered |
| **E-MINI®** | 2,969,965 | 36 | Incontestable |
| **PIVOT®** | 3,569,041 | 9, 35, 38 & 42 | Incontestable |